Leonard Besinger, Plaintiff-Appellant, v. National Tea Company, an Illinois Corporation, Defendant-Appellee.

Gen. No. 50,832.

First District, Third Division.

October 13, 1966.

Herrick, Vette, McNeill & McElroy, of Chicago (William T. McNeill, Ray W. Fick, Jr., and Robert W. Singer, of counsel), for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (William J. Lederer, Max E. Wildman and Donald E. Vacin, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

In a two-count complaint the plaintiff, Leonard Besinger, sought in count I specific performance of a contract by the defendant, National Tea Co., and in count II damages for breach of the contract. The defendant moved to dismiss both counts. The chancellor sustained the motion to dismiss count I and denied the motion as to count II. The plaintiff appealed following the express finding by the court that there was no just reason for delaying appeal from the order of dismissal.

Besinger is the beneficial owner of vacant real property located in Carpentersville, Illinois. He entered into negotiations with the National Tea Co. to lease his property for use as a supermarket and a discount store. As a result of the negotiations he mailed a written commitment to the company in June 1961, and the company in July 1961 sent him a telegram accepting his leasing commitment and all its items and conditions. Thereupon Besinger prepared a draft lease and submitted it to the company which returned it with the request that it be signed by his trustee as lessor and then sent back to the company for execution. Besinger did this but the company did not execute the lease. After much delay, explanations by the company for the delay and further

negotiations, Besinger made two written demands that the lease be signed. Finally, at the end of December 1961, the company returned the lease unsigned.

The commitment to lease provided that the company would construct a fully enclosed commercial building with an area of not less than 93,000 square feet suitable for a food supermarket or discount store. The term of the lease was to be for 15 years, with three options of renewal for terms of five years each. At the termination of the lease the building and all improvements were to become the sole property of Besinger. The building to be constructed was described as follows:

> ". . . Lessee . . . shall construct . . . a fully improved commercial building . . . having a fully enclosed area of not less than ninety-three thousand (93,000) square feet and suitable for use as a food supermarket or discount store. The Building shall be of as good or better quality and workmanship as the commercial building recently constructed for and a portion of which is presently operated by lessee as a food supermarket in Rolling Meadows, Illinois."

The lease also provided that:

> "Prior to the time that Lessee shall commence construction of the Building, Lessee shall submit the plans and specifications for the Building to Lessor for Lessor's approval. Lessee shall also at its sole expense construct, provide, furnish and maintain a parking lot area suitable for the operation of the Building to be constructed by Lessee, and any and all outbuildings, service areas, driveways, and all other structures necessary and suitable for the conduct of Lessee's business."

The chancellor stated that he could not decree specific performance because under settled law and the circum-

stances of the case he was not authorized to supervise the detailed planning and construction of the "fully improved commercial building" which the lease required National Tea to build. Besinger argues that the chancellor erred in his conclusions that a decree of specific performance would necessitate extensive supervision of the construction and that he was not authorized to undertake such supervision.

██ The chancellor and the parties below proceeded on the assumption that there was an enforceable contract, for the motion to dismiss admitted the facts well pleaded by the complaint. Consequently, the existence of a binding lease agreement is not in issue on appeal; the issue is whether the lease is subject to specific performance.

Besinger initially contends that this issue was not before the chancellor. It is his position that the relief sought in the specific performance count was simply a decree finding a binding contract between the parties and an order directing National Tea to sign the lease. He suggests that if this relief were granted the issue of specific performance of the terms of the lease would probably never come before the chancellor because the defendant would likely abide by a finding that a binding contract existed and, if it would not, the plaintiff conceivably would accept ground rent as damages.

The chancellor's decision that the motion to dismiss required him to rule on the availability of specific performance was correct. By his complaint the plaintiff did more than seek a judicial determination of the existence of the lease agreement and of his rights under it; he sought affirmative relief which ultimately could take the form either of specific performance or monetary damages. Both forms of relief are available only after the existence of a binding contract has been shown, and once that showing has been made it is difficult to perceive

utility in requiring the defendant to sign the lease. Rather, the next and obvious question is which form of relief is available to the plaintiff, and it is this question which the chancellor answered.

The plaintiff's first point is that a decree of specific performance would not require extensive supervision of the construction. He emphasizes that the building would be constructed by the defendant for its own use and occupancy for a term of at least 15 years, and notes that the defendant's food stores are nationally recognized by their distinctive design. His conclusion is that if specific performance were granted, the building which the defendant would construct would necessarily have to be well built and suitable for its intended purpose. And to minimize the need for court supervision, the plaintiff has stated in his brief and in oral argument before us that the building plans and specifications (which the lease requires to be submitted to him for approval) will be approved, as long as they are for a building of the size and type specified in the lease.

The plaintiff's second point is closely related to his first one: it is that even if some degree of judicial supervision would be required, in the circumstances of the case the chancellor should have granted specific performance. He states that the modern tendency is for equity to decree specific performance when the amount of supervision necessary is not excessive and a plaintiff cannot be adequately compensated by damages, and urges that this rationale applies to the instant case because the type of building, its purpose and square foot area are clearly established by the lease and because the value of his remainder interest in the building cannot accurately be estimated.

■ ■ The terms of a contract which a party seeks to enforce must be certain and clear so that the chancellor can order the specific things contracted to be done.

Sluka v. Bielicki, 335 Ill 202, 167 NE 90 (1929) ; London v. Doering, 325 Ill 589, 156 NE 793 (1927). Although the lease in question sets forth the type of building to be constructed, the purpose for which it shall be usable, its minimum enclosed area and a standard of quality and workmanship which it must meet, it does not specify the design of the building, the nature and quality of the construction materials or the nature and quality of the heating, lighting or plumbing systems. It does not specify the nature and number of the outbuildings and the "other structures necessary and suitable for the conduct of Lessee's [National's] business," nor does it specify the number and location of the service areas and driveways to be built. Obviously these are matters which must be settled before erection of the building is possible. Due to the absence of specifications and plans, the chancellor would be unable to order the construction of a particular building or determine that the resultant building constituted no greater benefit to the plaintiff than he had bargained for and no greater burden on the defendant than it had assumed. Hence, the relief of specific performance was properly denied.

The plaintiff has found no Illinois case wherein specific performance of a building contract was decreed, and has cited as persuasive authority Daniel v. Kensington Homes, Inc., 232 Md 1, 192 A2d 114 (1963), Grayson-Robinson Stores v. Iris Const. Corp., 8 NY2d 133, 202 NYS2d 303, 168 NE2d 377 (1960) ; Brummel v. Clifton Realty Co., Inc., 146 Md 56, 125 A 905 (1924) and Wolverhampton v. Emmons, 1 QB 515, 6 BRC 900 (1901). None of these authorities bears directly on the instant case. In Daniel a contractual provision requiring the defendant to develop land in accordance with the requirements of several governmental agencies was held not too uncertain for specific performance because the requirements could be ascertained from the agencies.

400

In the Grayson-Robinson Stores case the plans and specifications for the building were completed or practically completed. In the Brummel case a vendor was ordered to comply with the terms of a contract which listed certain repairs to be made to an unfinished house; however, the court noted that the work remaining to be done was clearly defined. In the Wolverhampton case the parties had agreed upon plans which specifically defined the elevation and form of the building, the construction material and the other particulars.

 Besinger's stated willingness to abide by the defendant's judgment in the designing of the building was neither set out in the complaint nor presented to the chancellor, and his declaration before this court is not binding on him. Since his remainder interest in the building constituted a considerable portion of the consideration given him for the lease, it is likely that in the preparation of the building plans and specifications the interests of the plaintiff and defendant would conflict. In view of the adverse interests of the parties it is improbable that agreement on all the necessary details could be reached without some intervention by the chancellor. This he recognized he should not do, for when the parties have failed to agree on all the material provisions of a contract, the chancellor cannot supply what they have left unprovided. Barnes v. Ludington, 51 Ill App 90 (1893). Even if the plans and specifications had been agreed upon it is doubtful whether specific performance would be available, for the decree would necessitate constant and prolonged judicial supervision of the construction operations. See Nelson v. McCabe Development Co., 343 Ill App 264, 98 NE2d 142 (1951); Harley v. Sanitary Dist. of Chicago, 54 Ill App 337 (1894) and the discussion in Ambassador Foods Corp. v. Montgomery Ward & Co., 43 Ill App2d 100 at 105–107, 192 NE2d 572 at 575, 576 (1963).

The chancellor properly left the plaintiff to his remedy at law. The order dismissing count I of the complaint is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.