WILLIE F. TAYLOR *et al.*, Plaintiffs-Appellants, v. TRANS ACCEPTANCE CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—93—0539

Opinion filed October 7, 1994.

Edelman & Combs (Daniel A. Edelman, Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, and Michelle A. Weinberg, of counsel), Lawrence Walner & Associates (Lawrence Walner, of counsel), and Chertkow & Chertkow (Glenn Chertkow, of counsel), all of Chicago, for appellants.

Jay L. Statland, of Chicago, for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Willie F. Taylor and Dwayne M. Taylor (plaintiffs) appeal a motion to dismiss their complaint against the Trans Acceptance Corporation and John Does 1 through 20 (defendants) alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)) (CFA) and the Illinois Sales Finance Agency Act (205 ILCS 660/1 *et seq.* (West 1992)) (SFAA). The complaint alleged that an automobile retail installment contract, cosigned by plaintiffs as buyers and assigned to defendants, was a violation of section 18 of the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/1 *et seq.* (West 1992)) (MVRISA), which warranted redress under the CFA and SFAA. The trial court, relying on the fourth district case of *Magna Bank v. Comer* (1992), 232 Ill. App. 3d 300, 600 N.E.2d 855, held that MVRISA section 18 did not apply to plaintiffs' contract and granted defendants' motion to dismiss. Plaintiffs appeal, contending *Comer* was incorrectly decided and that their complaint was sufficient to state a cause of action.

We reverse and remand.

BACKGROUND

The basis for plaintiffs' claim, MVRISA section 18, reads as follows:

"Each person, other than a seller or holder, who signs a retail installment contract may be held liable only to the extent that he actually receives the motor vehicle described or identified in the contract, except that a parent or spouse who co-signs such retail installment contract may be held liable to the full extent of the deferred payment price notwithstanding such parent or spouse has not actually received the motor vehicle described or identified in the contract and except to the extent such person other than a seller or holder, signs in the capacity of a guarantor of collection.

The obligation of such guarantor is secondary, and not primary. The obligation arises only after the seller or holder has diligently taken all ordinary legal means to collect the debt from the primary obligor, but has not received full payment from such primary obligor or obligors.

No provisions in a retail installment contract obligating such guarantor is valid unless:

(1) there appears below the signature space provided for such guarantor the following:

'I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein.'; and

(2) unless the guarantor, in addition to signing the retail installment contract, signs a separate instrument in the following form:

'EXPLANATION OF GUARANTOR'S OBLIGATION

You ... (name of guarantor) by signing the retail installment contract and this document are agreeing that you will pay ... (total deferred payment price) for the purchase of ... (description of goods or services) purchased by ... (name of buyer) from ... (name of seller).

Your obligation arises only after the seller or holder has attempted through the use of the court system to collect this amount from the buyer.

If the seller cannot collect this amount from the buyer, you will be obligated to pay even though you are not entitled to any of the goods or services furnished. The seller is entitled to sue you in court for the payment of the amount due.'

The instrument must be printed, typed, or otherwise reproduced in a size and style equal to at least 8 point bold type, may contain no other matter (except a union printing label) than above set forth and must bear the signature of the co-signer and no other person. The seller must give the co-signer a copy of the retail installment contract and a copy

of the co-signer statement." 815 ILCS 375/18 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 578).

Because plaintiffs' claims were dismissed on the pleadings, we must accept as true all well-pleaded facts in the complaint and all inferences that can reasonably be drawn from those facts. (*Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 473, 564 N.E.2d 1222.) A complaint should not be dismissed for failure to state a claim unless it clearly appears that no set of facts could be proved under the allegations that would entitle the party to relief. *Meerbrey*, 139 Ill. 2d at 473.

Applying these principles, we examine the facts as plaintiffs have pled them. On November 8, 1991, plaintiff Dwayne M. Taylor (D. Taylor) went to The Autobarn, Ltd. (Autobarn), to purchase a 1983 Saab. Autobarn undertook to finance the purchase through a retail installment contract to be assigned to defendant Trans Acceptance Corporation (TAC). Autobarn and TAC conducted a credit investigation on D. Taylor and requested a cosigner before extending credit to him.

D. Taylor's uncle, plaintiff Willie F. Taylor (W. Taylor), agreed to act as a cosigner. Plaintiffs informed Autobarn of the relationship between them, information which TAC also later obtained. Autobarn and TAC also conducted a credit check on W. Taylor, revealing that his address was different than that of his nephew. On November 8, 1991, D. Taylor and W. Taylor signed a retail installment contract (contract) as "Buyers" of the vehicle. Below the line for the second buyer's signature was the message: "Instruction: If parent or spouse is a co-buyer, sign above. Co-signers other than parent or spouse co-buyer sign on guarantor line below."

Promptly after the contract was executed, it was assigned to TAC on the face of the contract. Both TAC and Autobarn examined and approved the contract before its execution. The Saab was delivered to D. Taylor, who has retained possession since its delivery. W. Taylor has not used or had possession of the vehicle at any time. Defendants have made collection attempts against plaintiffs based on the contract.

Both defendant TAC and its auto dealers such as Autobarn had knowledge of MVRISA section 18. Yet on multiple occasions TAC and its dealers implemented a policy of making persons who were not to actually receive the vehicle, such as W. Taylor, sign as "buyers" even though TAC and Autobarn knew these persons were not subject to liability under MVRISA section 18 except as guarantors of collection. TAC then attempted to enforce the contract against "buyers" such as W. Brown while knowing these "buyers" were not liable due to MVRISA section 18.

The contract also contained the following provision, as required under Federal law in 16 C.F.R. part 433 (1993):

"ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

In response to the plaintiffs' complaint, the defendants filed a section 2—615 motion to dismiss for failure to state a claim. (735 ILCS 5/2—615 (West 1992).) Immediately after the motion was filed, the Appellate Court, Fourth District issued its decision in *Comer*. The *Comer* court stated:

"The purpose of the statute [MVRISA section 18] is obviously to limit the liability of persons, not buyers, who sign a retail installment contract, but to whom the extent of their personal liability in so doing has not been fully disclosed prior to or at the time of signing the contract. This is a laudable purpose, but the Act does not alter the liability of a buyer." *Comer*, 232 Ill. App. 3d at 304-05.

Because plaintiffs were both buyers of the car, the circuit court was compelled to dismiss the complaint in reliance on *Comer*. "In Illinois, the opinions of any district of the appellate court are binding on all of the State's trial courts." *People v. Foote* (1982), 104 Ill. App. 3d 581, 585, 432 N.E.2d 1254.

OPINION

I

■ After careful analysis of the language of MVRISA section 18 and its legislative history, we must disagree with *Comer*; we find that MVRISA section 18 may apply to car buyers who do not actually receive physical possession and use of the vehicle. A district of the appellate court is not always bound to follow the decisions of other districts, and decisions from other districts have only persuasive value for this court. *In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381, 398, 604 N.E.2d 929.

The primary rule of statutory interpretation, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature. (*Bonaguro v. County Officers Electoral Board* (1994), 158 Ill. 2d 391, 397, 634 N.E.2d 712.) Where statutory language is clear, it will be given effect without resorting to other aids for construction; however, where the language is ambiguous it is

appropriate to examine legislative history. *People v. Zaremba* (1994), 158 Ill. 2d 36, 40, 630 N.E.2d 797.

The *Comer* court, acting without the benefit of an appearance or brief from the consumer appellee, thought it could ascertain the meaning and purpose of MVRISA section 18 without looking at the legislative history of the provision. The *Comer* court believed that "[i]t is clear from a reading of section 18 of the Act that the legislature did not intend to limit the contractual obligation of a 'buyer.' " (*Comer*, 232 Ill. App. 3d at 304.) However, a clear example of unambiguous language on buyer liability is MVRISA section 18 as written *before* amended to its present form in 1975 by Public Act 79—738, section 2, effective September 4, 1975 (the amendment):

> "No provision in a retail installment contract obligating a person other than *the retail buyer or spouse of the buyer* to assume liability as a co-signer for the buyer is valid unless the co-signer, in addition to signing the retail instrument contract, signs a separate instrument in the following form." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 121$^1$/$_2$, par. 578.

We now compare that language to MVRISA section 18 today, as amended:

> "Each person, other than a seller or holder, who signs a retail installment contract may be held liable *only to the extent that he actually receives the motor vehicle* described ***." (Emphasis added.) 815 ILCS 375/18 (West 1992).

The amendment specifically replaces the words "retail buyer" with the words "[e]ach person [who] actually receives the motor vehicle." Where the legislature has made a material change in a statute, the presumption is that the amendment was intended to change the law. (*Board of Trustees of Southern Illinois University v. Department of Human Rights* (1994), 159 Ill. 2d 206, 213, 636 N.E.2d 528.) *Comer* would mandate that the present version of MVRISA section 18 affords no greater protection to consumers than the pre-1975 version. We cannot adopt *Comer* and its holding that buyer liability remains totally unaltered after this amendment.

Even if the present language of MVRISA section 18 was clearer, the Illinois Supreme Court has stated, "While we do not find [the statute] to be ambiguous, an amendment to a statute may be, nonetheless, indicative of legislative intent." (*People v. Brooks* (1994), 158 Ill. 2d 260, 270, 633 N.E.2d 692.) Thus, we turn to the legislative debate to find what the legislators wanted the amendment's phrase "actually receive" to mean. Senator Carroll stated:

> "[I]f you need a guarantor, if you don't want to give credit to the person, fine. You can still get a guarantor. It's a guarantor of

collection. It's not a prime obligation. *** Rather than saying, instead of even worrying about the guy who got the goods, go after the other one because maybe the uncle had some money, and you're not worried about the guy who got the goods. What this says is, first go after the guy who got the goods. If he doesn't pay you, then you still got the right to go after the other guy." 79th Ill. Gen. Assem., Senate Proceedings, June 26, 1975, at 40-41.

Thus, the purpose of the amendment was to ensure primary liability lay first with the person who "got the goods," the person with actual possession and use of the vehicle. Senator Rock explained:

"[House Bill 663 is] an amendment to the Retail Installment Sales Act and the Motor Vehicle Installment Sales Act, and what it does, effectively, is abolish the cosigner provision of those two Acts with the single exception that a parent or a spouse can still co-sign. What we are doing here is making those who purport to co-sign a guarantor of collection as opposed to a guarantor of payment. *** We are attempting, at least, to help the unwary who all too often sign as cosigners when they don't really, in fact, understand what they're doing." 79th Ill. Gen. Assem., Senate Proceedings, June 26, 1975, at 35.

The amendment was passed to prevent unwary cosigners from making themselves a guarantor of payment, as buyers without physical possession or use of a vehicle but saddled with primary liability. Opponents of the bill such as Senator Graham complained that it would "dry up credit." (79th Ill. Gen. Assem., Senate Proceedings, June 26, 1975, at 38.) However, opponents and supporters alike all realized the amendment made a substantial change in the liability provision under MVRISA section 18 and limited the ability of creditors to pursue cosigners.

In addition, we can think of no plausible explanation for the 1975 amendment of the term "buyer" to the phrase "[e]ach person [who] actually receives" other than a desire by the legislature to protect some buyers. The legislature could have chosen to continue to use the term "buyer," a term defined in MVRISA itself: " 'retail buyer' or 'buyer' means a person who buys a motor vehicle from a retail seller, primarily for personal, family, household or agricultural purposes in a retail installment transaction." (815 ILCS 375/2.2 (West 1992).) "Where a particular provision appears in a statute, the failure to include that same requirement in another section of the statute will not be deemed to have been inadvertent." *Siciliano v. Village of Westchester Firefighters' Pension Fund* (1990), 202 Ill. App. 3d 964, 967, 560 N.E.2d 885.

Although defendant alleges the amendment was only meant to change guarantor status without altering buyer liability, the

amendment made two separate statutory changes with two different effects. The amendment's sponsor, Representative McLendon, explained:

> "[The amendment] limits the liability of all persons other than the seller or holder who co-signs a retail installment contract *to the extent that such person has received the goods.* \*\*\* [T]he intent of the Bill is only to protect the ignorant cosigner who does not know the full extent of legal effect of co-signing. *Second,* to make the cosigner liable only if the purchaser is not able to pay after the seller or holder has taken appropriate court action." (Emphasis added.) (79th Ill. Gen. Assem., House Proceedings, May 10, 1975, at 76-77.)

Thus, the bill clearly had two separate functions, the first one being protection of unwary cosigners such as W. Taylor. It was this first change that was expressed in the amendment's change of language from "buyer" to "actually receives."

Returning to the *Comer* decision, the reasoning *Comer* actually used was meritless. *Comer* stated:

> "It is clear from a reading of section 18 of the Act that the legislature did not intend to limit the contractual obligation of a 'buyer.' Section 18 employs the term 'cosigner,' but the Act does not define that term separately. In the context of the statute, it is clear a guarantor is a cosigner since only a cosigner may sign the form entitled 'Explanation of Guarantor's Obligation' and the seller must provide a copy of that document and a copy of the retail installment contract to the 'co-signer.' A cosigner is generally a person who signs the contract, but is not listed in the body of the contract as a buyer or principal obligor, where some other person has been so designated. (See *R.S. Boston Co. v. Chapman* (1970), 131 Ill. App. 2d 385, 386-87, 266 N.E.2d 767, 768-69.)" (*Comer,* 232 Ill. App. 3d at 304.)

Thus, the *Comer* court gave two rationales why MVRISA section 18 did not apply to buyers: (1) a "guarantor is a cosigner since only a co-signer may sign the form entitled 'Explanation of Guarantor's obligation' "; and (2) a "cosigner is generally a person who signs the contract, but is not listed in the body of the contract as a buyer or principal obligor, where some other person has been so designated." (*Comer,* 232 Ill. App. 3d at 304.) However, both these premises were unjustified.

As to the first premise, both MVRISA section 18 and the contract use the term "cosigner" to designate buyers as well as guarantors. An example from MVRISA section 18: "except that a parent or spouse who *co-signs* such retail installment contract may be held liable to the full extent of the deferred payment price notwithstanding

that such parent or spouse has not actually received the motor vehicle." (815 ILCS 375/18 (West 1992).) Just as importantly, the contract itself uses the term "co-signer" to designate guarantors *and co-buyers.* Below the line for the second buyer's signature on the retail installment contract is this statement: "Instruction: If parent or spouse is a co-buyer, sign above. *Co-signers other than parent or spouse co-buyer* sign on guarantor line below." (Emphasis added.) The contract clearly intended "co-signer" to mean any additional person who signed a retail installment contract, just as MVRISA section 18 did.

As to its second premise, the *Comer* court relied on a case from 1970 that based its holding on the language of the Retail Installment Sales Act (RISA) (Ill. Rev. Stat. 1969, ch. 121$^1$/$_2$, par. 519)—the same act which was amended with MVRISA in 1975 to its present form designating cosigners. The case *Comer* used, *R.S. Boston Co. v. Chapman* (1970), 131 Ill. App. 2d 385, 266 N.E.2d 767, evaluated a transaction under the pre-1975 version of RISA section 19, which was almost identical to language in pre-1975 MVRISA section 18:

"No provision in a retail installment contract obligating a person other than the retail buyer or spouse of the buyer to assume liability for payment of the deferred payment price of a co-signer for the buyer is valid unless the co-signer, in addition to signing the retail installment contract, signs a separate instrument in the following form." (Ill. Rev. Stat. 1969, ch. 121$^1$/$_2$, par. 519.)

In 1975, RISA section 19 was amended to this familiar language:

"Each person, other than a seller or holder, who signs a retail installment contract *** may be held liable only to the extent that he actually receives the goods sold or services furnished in the retail installment transaction, except that a parent or spouse who co-signs such contract, agreement or instrument may be held liable to the full extent of the deferred payment price ***." (815 ILCS 405/19 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 519).)

Thus, RISA section 19 also changed its language to include primarily liable parents among those designated as cosigners. *Comer*, in effect, uses the pre-1975 versions of both MVRISA section 18 and RISA section 19 to define liability under the post-1975 versions of the law, even though the legislature clearly intended to change the law. We must disagree with the conclusions *Comer* reached.

Moreover, we do not believe it to be an onerous burden on automobile sales companies to have them ask cosigners if they will actually utilize the vehicle. If the cosigner says no, he should sign the installment contract as a guarantor, and if he says yes, he would be

estopped from denying primary liability as a co-buyer under the contract. Furthermore, in this case the contract itself contemplated effectuating MVRISA section 18. Below the line for the second buyer's signature was the message: "Instruction: If parent or spouse is a co-buyer, sign above. Co-signers other than parent or spouse co-buyer sign on guarantor line below." The contract thus contemplates that prior to its execution, a person's capacity to cosign a retail installment contract will be made based on the criteria laid out in MVRISA section 18, and those not falling within a class of persons who may sign as "co-buyers" shall only sign as "guarantors of collection." We believe that in most situations it will be obvious, as the complaint alleges in this case, whether the cosigner wishes to act as an additional user of the vehicle or has been asked to be a mere guarantor for another buyer.

The results of enforcing this statute will not be onerous to consumers either. People who wish to share ownership of a vehicle, but not its use, can make a separate contract between themselves to share the installment payments of a car loan, or as Senator Rock described—"an ancillary contract of some sort." (79th Ill. Gen. Assem., Senate Proceedings, June 26, 1975, at 38.) If two people instead wished to both sign the installment contract (one as guarantor), they could still make a separate agreement between themselves to share ownership. Lastly, any car co-buyer who substantially utilized a vehicle would have "actually received" it and would not come under the statute.

Finally, after concluding MVRISA section 18 applies to buyers, we confront defendants' contention that MVRISA section 18 does not apply to this transaction because the plaintiffs are not "cosigners." Defendants argue that being designated a buyer in the body of the contract precludes any protection under the provisions of MVRISA section 18. We see no merit in this argument. MVRISA section 18, entitled "Co-signers," defines "cosigner" quite simply as "[e]ach person, other than a seller or holder, who signs a retail installment contract may be held liable." (815 ILCS 375/18 (West 1992).) The word "cosigner" is defined nowhere else in the statute. Moreover, the caption supplied by the publisher of the Illinois Revised Statutes is not part of the official title or contents of the statute, and the heading of a statute cannot alter the plain meaning of the substantive language. (*Greater Peoria Sanitary & Sewage Disposal District v. Baise* (1992), 234 Ill. App. 3d 622, 626, 600 N.E.2d 75.) Accordingly, we believe any designation outside of the retail installment contract is extraneous and inapplicable. In construing a statute, it is never proper for a court to depart from plain language by reading into a

statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent. (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469.) Plaintiffs signed a retail installment contract, and that is all that is required to come under the protection of the statute.

Lastly, our decision to disagree with *Comer* is made considerably easier by the recent decision of this court in *Arca v. Colonial Bank & Trust Co.* (1994), 265 Ill. App. 3d 498, 637 N.E.2d 687. The facts of *Arca* were similar to this case: an allegedly deceived co-buyer of a car brought a section 2 action for deceptive practices as a result of the MVRISA section 18 violation. The *Arca* court, without comment on *Comer*, held that the alleged facts were sufficient to institute a claim for common law fraud, even though there was no private right of action for a MVRISA violation. (*Arca*, 265 Ill. App. 3d at 502, 637 N.E.2d at 690.) The holding in *Arca* is inconsistent with *Comer* by finding that a cause of action may be maintained by a buyer. We hold that MVRISA section 18 may apply to buyers who do not "actually receive" a vehicle and utilize it.

## II

■ Defendants also attack the sufficiency of the complaint independent of our resolution of MVRISA section 18 and buyer liability. After concluding MVRISA section 18 does apply to this transaction, we find the complaint alleges sufficient facts to allege a cause of action. The plaintiffs allege that defendants had almost complete equality with Autobarn in the formation and approval of the contract at issue, as well as multiple other contracts which similarly violated MVRISA section 18. The allegations of involvement by defendants in the formation and execution of the sales contracts are sufficient to raise factual issues as to the liability of the defendants to the Taylors for wilful and multiple misrepresentations. The defendants contest many of the plaintiffs' allegations in this appeal, but a motion for summary judgment is the proper channel for defendants to oppose factual allegations which they believe cannot be sustained. This case, like *Arca* and its similar circumstances, has sufficient factual allegations to withstand the motion to dismiss. Following *Meerbrey* (139 Ill. 2d at 473), we cannot say "it clearly appears that no set of facts could be proved under the allegations" that would entitle plaintiffs to relief from defendants' actions and direct involvement.

In addition, plaintiffs allege facts which may subject defendants to liability for plaintiffs' fraud claims against Autobarn, as dictated in the contract provision required under Federal law 16 C.F.R. part 433 (1993). "The rule was designed to preserve the consumer's claims

and defenses and restore the right of nonpayment to the consumer by eliminating the creditor's holder-in-due-course status." (*Felde v. Chrysler Credit Corp.* (1991), 219 Ill. App. 3d 530, 536, 580 N.E.2d 191.) Fraud is among the claims that a consumer may assert against the assignee of his retail sales contract based on 16 C.F.R. part 433 (1993). (*Armstrong v. Edelson* (N.D. Ill. 1989), 718 F. Supp. 1372, 1379.) While the scope for relief beyond nonpayment depends on the severity of the seller's breach (*Felde*, 219 Ill. App. 3d at 536), we need not consider this issue on a motion to dismiss.

### III

■ Finally, defendants argue that several other issues could sustain their motion to dismiss. However, these other issues were not specified in the defendants' motion, and the trial court relied only on *Comer* in making its ruling. We hold it would not be proper to sustain a dismissal on these other issues before they are addressed in the trial court.

A motion which objects to pleadings "shall point out specifically the defects complained of, and shall ask for appropriate relief." (Ill. Rev. Stat. 1991, ch. 110, par. 2—615(a).) The movant is required to specify defects in the pleadings so that the complainant will have an opportunity to cure them by amendment. (*Smith v. Chemical Personnel Search, Inc.* (1991), 215 Ill. App. 3d 1078, 1084, 576 N.E.2d 340.) Thus, grounds not specified in the motion to dismiss cannot be urged on appeal. (*Smith*, 215 Ill. App. 3d at 1084.) A decision otherwise would be unfair to the complainant and inappropriate. (*Pease v. International Union of Operating Engineers Local 150* (1991), 208 Ill. App. 3d 863, 567 N.E.2d 614; *Cutsinger v. Cullinan* (1979), 72 Ill. App. 3d 527, 391 N.E.2d 177.) The supreme court of Illinois stated, "[I]t was inappropriate here [to dismiss the] plaintiffs' complaint with prejudice on the basis of a correctable pleading defect not raised in the trial court where it was likely that plaintiffs would have been granted leave to amend their complaint if the pleading defect had been found below." (*Geaslen v. Berkson, Gorov & Levin, Ltd.* (1993), 155 Ill. 2d 223, 230, 613 N.E.2d 702.) Plaintiffs are generally granted at least one chance to amend their pleadings (*Sinclair v. State Bank* (1992), 226 Ill. App. 3d 909, 910, 589 N.E.2d 862) and should usually be allowed the opportunity whenever the alternative would be dismissal of the complaint. (*Gouge v. Central Illinois Public Service Co.* (1990), 195 Ill. App. 3d 1026, 1032, 552 N.E.2d 1304, *rev'd on other grounds* (1991), 144 Ill. 2d 535, 582 N.E.2d 108.) We will not affirm a dismissal on other grounds before these matters are pursued and resolved in the trial court.

574

For the foregoing reasons, the trial court's order dismissing plaintiffs' complaint is reversed and set aside, and the cause is remanded for further proceedings in accordance herewith.

Reversed and remanded.

MURRAY, P.J., and GORDON, J., concur.