FRANKLIN POINT, INC., Plaintiff-Appellant, v. HARRIS TRUST AND SAVINGS BANK, Defendant-Appellee.

First District (5th Division)   No. 1—94—3537

Opinion filed December 29, 1995.

COUSINS, P.J., dissenting.

Sarah R. Wolff, Michael D. Richman, and Laura M. Wunder, all of Sachnoff & Weaver, Ltd., of Chicago, for appellant.

Alan R. Borlack and Eric G. Grossman, both of Bailey, Borlack, Nadelhoffer & Carroll, of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Franklin Point, Inc. (FPI), brought a breach of contract action, seeking specific performance in count I and damages in count II, against defendant Harris Trust and Savings Bank (Harris Bank). The trial court granted Harris Bank's motion to dismiss count I of FPI's complaint and denied FPI's request for leave to amend its complaint. We reverse and remand to give FPI an opportunity to amend its complaint.

On July 30, 1990, FPI and Harris Bank entered into a written contract pursuant to which Harris Bank agreed to build and occupy an office building at an eight-acre, multi-use commercial real estate development located near Chicago's downtown, called Franklin Point. Harris Bank agreed to purchase a certain parcel of land in the development for approximately $11,500,000. Harris Bank agreed that by July 30, 1993, it would commence construction on that land of a high-rise office building containing not more than 1,200,000 square feet and not less than 800,000 square feet. The contract stressed the importance of Harris Bank's building as an anchor of the Franklin Point development.

Harris Bank paid FPI approximately $11,500,000 for the sale of the property, but Harris Bank failed to begin construction of the high-rise office building by July 30, 1993. No other part of Franklin Point was developed. FPI brought suit against Harris Bank for specific performance and damages. The trial court dismissed FPI's claim for specific performance on the basis that "Illinois law is well-settled that specific performance of construction projects is forbidden as a matter of law." The trial court also denied with prejudice FPI's request for leave to file an amended complaint.

FPI appeals, contending that specific performance is not forbidden in all construction contracts and is appropriate in this particular case since: (1) the parties contractually agreed to a dispute resolution mechanism regarding approval of construction plans and designs that would avoid judicial supervision of the building process; (2) Harris Bank was bound contractually to follow a set of detailed development guidelines when building its office building; and (3) Harris Bank expressly agreed in the contract that specific performance is an appropriate remedy.

The trial court dismissed FPI's claim for specific performance, finding that construction contracts could not be specifically enforced under any set of circumstances. We are unwilling to agree with such a broad assertion that specific performance can never be granted in a construction case. In *Klingbeil v. Becklenberg* (1928), 249 Ill. App. 39, 43, the court stated in *dictum* that "[w]hile the general rule is stated to be that a court of equity will not specifically enforce a contract for the construction of a building, yet there are exceptions to this rule, and in a proper case such a contract will be specifically enforced."

Since *Klingbeil*, Illinois courts of review have upheld trial court decisions refusing to grant specific performance of contracts to construct a building in several cases. These courts denied specific performance not simply on the basis that a construction contract was involved, but rather after making a determination that the courts would have to become involved with prolonged and continuous oversight of the construction process. In *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773, for example, the court, after conducting an evidentiary hearing, denied plaintiff's request for specific performance of the construction of a building, finding that specific performance would require a succession of acts and the protracted personal supervision, special skill, judgment and direction of the trial court. Similarly, in *Besinger v. National Tea Co.* (1966), 75 Ill. App. 2d 395, 221 N.E.2d 156, the court denied specific performance, stating that although the lease set forth the type of building to be constructed, the purpose for which it would be used, and a standard of quality and workmanship which it must meet, it did not specify the design of the building, the nature and quality of the construction materials or the nature and quality of the heating, lighting, or plumbing systems. Due to the adversarial nature of the parties' relationship, the court found it unlikely that the parties would be able to agree on these matters without the court's intervention.

In *Bezin v. Ginsburg* (1980), 91 Ill. App. 3d 555, 415 N.E.2d 9, the plaintiff sought to have rebuilt a building defendant had torn down.

The court denied plaintiff's request for specific performance on the basis that ordering the rebuilding of the building would force the court to become an expert in the methods and skills of the construction industry and involve the court in constant and prolonged supervision over the construction process through supplementary proceedings designed to assure that the order was being carried out by a party who obviously had no desire to carry it out. See also *Roston Investments v. Opus Corp.* (N.D. Ill. September 13, 1990), No. 90—C—2524 (the court dismissed plaintiff's claim for specific performance, holding that an award of specific performance would involve detailed, ongoing supervision by the court which Illinois forbids as a matter of law).

■ As other courts have recognized, specific performance of a construction contract should not be denied simply because it involves the construction of a building. In *Grayson-Robinson Stores, Inc. v. Iris Construction Corp.* (1960), 8 N.Y.2d 133, 137, 168 N.E.2d 377, 378, 202 N.Y.S.2d 303, 305, the majority found specific performance appropriate where the plans and specifications for the building were completed or practically completed. The majority explained that "[t]here is no hard and fast rule against applying the remedy of specific performance to [building construction] contracts, especially when the parties have by agreement provided for just that remedy." 8 N.Y.2d at 137, 168 N.E.2d at 378, 202 N.Y.S.2d at 305.

In *City Stores Co. v. Ammerman* (D.C. Cir. 1967), 266 F. Supp. 766, *aff'd* (1968), 394 F.2d 950, the court found specific performance appropriate and enforced an option that required a party to construct a building. The court found that the standards to be followed in construction of the store were set out in the leases with specific particularity, making design and approval of the store a fairly simple matter if the parties dealt with each other in good faith. The court noted that specific performance should not be denied merely on the generic subject matter of the contract, but should instead involve a weighing of the need for ongoing judicial supervision with the importance of enforcement to the plaintiff.

Thus we view the critical inquiry in the instant case to be not simply whether FPI is seeking specific performance of a construction contract, but rather, whether if specific performance is granted, the court will be required to become involved in prolonged supervision of the building's construction if disputes arise. If the trial court will not be required to become embroiled in continuing disputes and decisions regarding the building's construction, specific performance may be an appropriate remedy.

FPI was denied specific performance and leave to amend because

the trial court believed that specific performance of a construction contract is barred as a matter of law. We do not construe the cases cited above and those cited by the dissent as requiring such a conclusion. The dissent cites *Besinger, Yonan,* and *Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 409 N.E.2d 515, in support of its conclusion that specific performance is forbidden as a matter of law in Illinois. In two of the three cases cited by the dissent, *Yonan* and *Bissett,* however, the court denied the requests for specific performance of construction contracts only after discovery was conducted and evidence was heard. The reviewing court in those cases upheld the trial courts' decisions as not being against the manifest weight of the evidence. Therefore, these cases do not support the dissent's conclusion that specific performance of a construction contract is forbidden as a matter of law.

FPI's complaint alleges that under the terms of FPI and Harris Bank's agreement, there would be no need for the trial court to become involved in Harris Bank's construction of the building. FPI claims that its contract with Harris Bank granted Harris Bank the sole discretion in the design and construction of the interior of the building. According to FPI, this eliminates the need for any judicial supervision as to the building's interior. Furthermore, the parties contractually agreed that an architectural review board (the ARB) would be appointed and that Harris Bank would need to obtain the ARB's approval on all other construction plans. FPI claims that the ARB's role in preapproval of all construction plans and designs would remove the potential for disputes and obviate the need for judicial oversight in the construction process.

According to the parties' contract, Harris Bank was required to submit for the ARB's approval plans for such areas as: (1) master development of the parcel; (2) design dimensions; (3) locations of all structures, easements, walks and driveways; (4) all landscaping; (5) location, height and intensity of exterior lighting; and (6) location, size and type of all pipes and lines. The construction plans were to be submitted at three separate intervals by Harris Bank: (1) when the plans are 30% complete (schematic design drawings); (2) 60% to 70% complete (design development plans); and (3) 100% complete (construction plans). The ARB has the right to disapprove the plans submitted if they are incomplete, are not in accordance with developmental guidelines, or the ARB determines "in its reasonable discretion" that the improvements "are not architecturally, aesthetically, or physically compatible or engineered to be compatible, with other improvements in the development." FPI alleged, on information and belief, that Harris selected architectural and engineering consultants who developed schematic design drawings for a building that were sufficient for initial submission to the ARB.

Although Harris Bank has yet to submit the schematic design drawings, or obtain completed construction plans, FPI contends that the ARB's existence will prevent the trial court from becoming involved in the ongoing oversight of the building or from being obligated to continually monitor or approve Harris' construction plans. FPI claims that the parties knowingly contracted to prevent the ongoing, continuous, and day-to-day need for judicial oversight in the construction process by agreeing to abide by the decisions of the ARB, as long as those decisions were in the ARB's reasonable discretion.

Harris Bank, on the other hand, contends that because FPI has the authority to appoint the majority of the members of the ARB, the ARB will never approve Harris Bank's construction plans. Harris Bank also claims that it will likely challenge any decision made by the ARB. We must assume, however, that the parties will deal with each other in good faith. Also, because FPI is the party seeking the construction of the building, it is unlikely that the members of the ARB will unreasonably disapprove of construction plans so as to hinder the construction process. Nonetheless, we are not convinced, based on FPI's allegations in its current complaint for specific performance, that the ARB will completely eliminate the need for prolonged and constant judicial supervision of the building's construction.

FPI maintains that given the opportunity to amend its complaint, it will be able to demonstrate that the ARB will eliminate any need for continuous and prolonged judicial supervision of the building's construction. The establishment of the ARB under the contract in the case at bar presents us with a factual situation unlike those previously addressed by Illinois courts. In *Besinger*, which the dissent claims is "particularly analogous" to the instant case (277 Ill. App. 3d at 500), it was the approval of one of the litigants, not that of an oversight committee like the ARB, that was needed on the unfinished plans and specifications. The reviewing court in *Besinger* affirmed the trial court's denial of specific performance on the basis that the facts alleged in the complaint indicated clearly that such a remedy would require the trial court's supervisory involvement in any construction disputes. The court recognized that due to the adversarial nature of the parties' relationship, it was unlikely that all the necessary details could be agreed upon by the parties and resolved without the court's intervention.

The majority in *Grayson-Robinson* points out that "[m]odern writers think that the 'difficulty of enforcement' [of specific performance of a construction contract] is exaggerated and that the trend is to-

ward specific performance." (*Grayson-Robinson*, 8 N.Y.2d at 139, 168 N.E.2d at 379, 202 N.Y.S.2d at 306, citing 5 A. Corbin, Corbin on Contracts § 1172 (1955); 5 S. Williston & G. Thompson, Williston on Contracts § 1423, at 3977 (rev. ed. 1937); Restatement of Contracts § 371, Comment *a* (1932).) The dissent in our case claims that the court in *Yonan* "expressly rejected" the decision in *Grayson-Robinson*. (277 Ill. App. 3d at 501.) We, however, read *Yonan* as disagreeing not with the result in *Grayson-Robinson*, but instead with the view of the "modern writers." The *Yonan* court stated that rather than follow the modern view that the need for judicial supervision in construction contracts has been exaggerated, it adhered to the "traditional *** principle" that specific performance of a construction contract should be denied on the basis that a trial court is not well suited to supervise the construction of a building it found would be required on the facts of that case. *Yonan*, 27 Ill. App. 3d at 975.

The majority in *Grayson-Robinson* found that the trial court had not abused its discretion in granting specific performance since the evidence showed that the trial court would not need to become embroiled in overseeing the building's construction. The *Yonan* court determined, after conducting an evidentiary hearing, that the trial court did not abuse its discretion in denying specific performance on the basis that the trial court would be required to supervise the building's construction. The *Grayson-Robinson* and *Yonan* decisions are not inconsistent, since each case was reviewed under the abuse of discretion standard and each considered the evidence regarding whether the trial court would be required to engage in ongoing supervision of the building's construction. The *Yonan* court never held that specific performance of a construction contract is forbidden as a matter of law. Even the dissenters in *Grayson-Robinson*, who were of the opinion that the trial court abused its discretion in granting specific performance, did not go so far as to say that there could be no specific performance of a construction contract as a matter of law. Rather, it was their view that under the facts of that particular case, the court would be embroiled in enforcement problems that would entail extensive judicial supervision of the construction process. The *Grayson-Robinson* dissenters noted, however:

> "If the arbitrators [involved in the case] were to remain upon the scene and supervise and enforce the building operations which courts are not created to handle, the result might be different. Once the award has been confirmed and judgment of specific performance entered, the arbitrators depart and the court has to enforce the building contract by contempt proceedings ***. The

court cannot look to the arbitrators to resolve disputes arising in the erection of this building, either of interpretation of the building contract, plans or specifications, or concerning performance." *Grayson-Robinson*, 8 N.Y.2d at 142, 168 N.E.2d at 381, 202 N.Y.S.2d at 309.

■ In the case at bar, we are not ordering the trial court to grant specific performance. We are merely directing the trial court to permit FPI one opportunity to amend its complaint to attempt to show that the ARB will perform the functions that the dissent in *Grayson-Robinson* suggested that an arbitrator might perform in order to demonstrate that a decree of specific performance would not embroil the court in the ongoing supervision of the construction contract disputes. Therefore, since we are not ordering the trial court to grant specific performance in this case, the fact that almost 20 years after *Besinger* no court of review has found that the trial court's refusal to decree specific performance in a building construction case was an abuse of discretion does not require us to conclude that specific performance is unavailable in a building construction case as a matter of law.

We do not suggest that the parties can *require* a court to recognize the remedy of specific performance merely by contractually agreeing to it should there be a breach. A court has the independent duty to determine whether the contract can be specifically performed without inordinate monitoring or supervision of performance by the court, notwithstanding the fact the parties agreed to the appropriateness of the remedy. Therefore, we believe that FPI should have at least one opportunity to amend its complaint in order to allege additional facts more clearly demonstrating how the ARB will operate and why the presence of the ARB would obviate the necessity of judicial oversight of the building's construction. See *Taylor v. Trans Acceptance Corp.* (1994), 267 Ill. App. 3d 562, 641 N.E.2d 907 (plaintiffs generally should be granted at least one chance to amend their pleadings before court dismisses a complaint with prejudice).

Harris Bank claims that FPI should not be given an opportunity to amend because it never tendered to the court a written amendment. Under the circumstances here, however, the failure to tender to the court a written amendment does not waive FPI's right to such an amendment. The record reveals that immediately after the trial court granted Harris Bank's motion to dismiss, FPI requested an opportunity to file an amended complaint. FPI sought the opportunity to show that judicial supervision in the construction process would be unnecessary. This would have been FPI's first amended complaint. The court denied FPI's request, stating that "[i]f you're going to be

seeking specific performance," "let's not waste the time of the court. I think my order is final. If you want to appeal it, you can appeal on count 1 ***." Because the court refused FPI's request to file an amendment, stating that it would not consider it if it requested specific performance, FPI was excused from tendering a proposed written amendment to the trial court in order to preserve its right to appeal. See *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164.

The circumstances here are quite different from those presented to this court in *Smith v. Sheriff of Cook County* (1995), 277 Ill. App. 3d 335, which has been cited by the dissent. (See 277 Ill. App. 3d at 502.) The plaintiff in *Smith* had been granted one leave to amend by the trial court. Smith claimed on appeal, however, that he was wrongfully denied an opportunity to file a second amended complaint. We determined that Smith had not preserved this issue for appeal since he not only failed to present the court with a proposed written amendment, but never even orally requested leave to amend. Here, FPI's request to amend was its first. FPI orally requested leave to amend in order to provide the court with more information demonstrating that the ARB will obviate the necessity of a court becoming involved in the building's construction. The court orally denied FPI's request, stating that an amendment would waste the court's time, and later, in a written order, the court stated that it was denying FPI's request for leave to amend because any amendment seeking specific performance of a building's construction would be "futile." Under the circumstances described above, FPI could reasonably conclude that filing a proposed written amendment would have served no purpose other than to antagonize the trial court.

Accordingly, for the reasons set forth above, the trial court's order denying FPI an opportunity to amend count I of its complaint requesting specific performance is reversed and this case is remanded for further proceedings.

Reversed and remanded.

T. O'BRIEN, J., concurs.

JUSTICE COUSINS, dissenting:

The trial court prefaced its opinion by indicating that the court had read the pleadings of the parties "with keen interest," noting that this was a case of "sizable magnitude." The court then stated that "Illinois law is well settled that specific performance of construction projects is forbidden as a matter of law." The court cited three

particular Illinois cases: *Besinger v. National Tea Co.* (1966), 75 Ill. App. 2d 395, 221 N.E.2d 156; *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773; and *Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 409 N.E.2d 515. In my opinion, the doctrine of *stare decisis* now applies to the case *sub judice.*

The *Besinger* case is particularly analogous to the instant case. In *Besinger*, the plaintiff, Leonard Besinger, in a two-count complaint, sought specific performance by the defendant, National Tea Co., and damages for breach of the contract against the defendant in counts I and II, respectively. Defendant moved to dismiss both counts. As in the instant case, the chancellor sustained the motion to dismiss count I and denied the motion as to count II.

In that case, the plaintiff and defendant entered into a contract in which the defendant agreed to construct

> "a fully improved commercial building ... having a fully enclosed area of not less than ninety-three thousand (93,000) square feet and suitable for use as a food supermarket or discount store. The Building shall be of as good or better quality and workmanship as the commercial building recently constructed for and a portion of which is presently operated by lessee as a food supermarket in Rolling Meadows, Illinois." (75 Ill. App. 2d at 397.)

The lease also provided:

> "Prior to the time that Lessee shall commence construction of the Building, Lessee shall submit the plans and specifications for the Building to Lessor for Lessor's approval. Lessee shall also at its sole expense construct, provide, furnish and maintain a parking lot area suitable for the operation of the Building to be constructed by Lessee, and any and all outbuildings, service areas, driveways, and all other structures necessary and suitable for the conduct of Lessee's business." 75 Ill. App. 2d at 397.

In affirming the trial court, the appellate court wrote: "The plaintiff has found no Illinois case wherein specific performance of a building contract was decreed ***." (75 Ill. App. 2d at 401.) Significantly, almost 20 years after *Besinger*, the plaintiff can cite no Illinois case wherein specific performance of a building contract has been decreed.

In the case *sub judice*, the record establishes that Harris Bank has submitted no schematic design drawings and has completed no construction plans. Being mindful of the lack of any building plans, the majority writes "we are not ordering the trial court to grant specific performance. We are merely directing the trial court to permit FPI one opportunity to amend its complaint to attempt to show that the ARB will perform the functions that the dissent in

*Grayson-Robinson* suggested that an arbitrator might perform in order to demonstrate that a decree of specific performance would not embroil the court in the ongoing supervision of the construction contract disputes." 277 Ill. App. 3d at 498.

Subsequently, in its decision to reverse the trial court, the majority writes, "we are not convinced, based on FPI's allegations in its current complaint for specific performance, that the ARB will completely eliminate the need for prolonged and constant judicial supervision of the building's construction." (277 Ill. App. 3d at 496.) However, it is clear from the transcript of the proceedings had in this case and the record that the trial court was convinced that agreement on all the necessary details could not be reached without the intervention of the court. *Per force,* I dissent.

Significantly, the *Besinger* court wrote: "The plaintiff's first point is that a decree of specific performance would not require extensive supervision of the construction." (*Besinger,* 75 Ill. App. 2d at 399.) To the plaintiff's first point, I note that the *Besinger* court wrote: "Due to the absence of specifications and plans, the chancellor would be unable to order the construction of a particular building \*\*\*." *Besinger,* 75 Ill. App. 2d at 400.

Moreover, the *Besinger* court concluded: "Even if the plans and specifications had been agreed upon it is doubtful whether specific performance would be available, for the decree would necessitate instant and prolonged judicial supervision of the construction operations. [Citations.]" *Besinger,* 75 Ill. App. 2d at 401.

Finding no Illinois case to support its opinion, the majority seeks to rely upon the New York case of *Grayson-Robinson Stores, Inc. v. Iris Construction Corp.* (1960), 8 N.Y.2d 133, 136-37, 168 N.E.2d 377, 378, 202 N.Y.S.2d 303, 305. *Grayson v. Robinson* is an arbitration award case. There, the court found specific performance appropriate where the plans and specifications for the building were completed or practically completed. However, the *Grayson-Robinson* decision, where the plans were completed or practically completed, was expressly rejected in *Yonan v. Oak Park Federal Savings & Loan Association,* 27 Ill. App. 3d at 975, where the court wrote: "However, it is our opinion that the traditional and well-established principle that specific performance of building and construction contracts will be denied is the better-reasoned rule of law. We espouse the view that the trial courts are not particularly well suited to supervise building construction and that denial of specific performance of such contracts promotes the goal of all litigation, finality." Interestingly, I note that the majority in the case *sub judice* argues that *Yonan* does not reject *Grayson v. Robinson.* Query.

Regarding the futility of specific performance in the case *sub judice*, see also *New Park Forest Associates II v. Rogers Enterprises, Inc.* (1990), 195 Ill. App. 3d 757, 765, 552 N.E.2d 1215, wherein the court, in denying injunctive relief, wrote: "It is possible that, during the life of a mandatory injunction, the court would never have to enforce any of those terms or judge 'better quality.' Problems may never arise. If problems did arise, however, the court would find itself in the business of managing a shopping center."

Plaintiff also contends that the trial court abused its discretion by denying plaintiff at least one chance to amend its complaint. However, on the record before the trial court, plaintiff had no right to further amend where plaintiff did not provide the trial court with either a proposed amendment to the amended complaint or otherwise give a specific indication to the court of the contents of the proposed amendment to the amended complaint. See *Intini v. Schwartz* (1979), 78 Ill. App. 3d 575, 579, 397 N.E.2d 84; see also *Smith v. Sheriff of Cook County* (1995), 277 Ill. App. 3d 335, 339 ("The trial court's comment, however, does not relieve plaintiff of the responsibility of asking for leave to amend and providing the court with a proposed amendment in order to preserve his right to appeal the denial of the request").

*A fortiori*, I dissent.