**SHEFFIELD COMMERCIAL CORPORATION, Plaintiff-Appellee,**

v.

**James V. CLEMENTE, Defendant-Appellant, Third-Party Plaintiff,**

**Westchester Foreign Car Service, Inc., Third-Party, Defendant-Appellee.**

**SHEFFIELD COMMERCIAL CORPORATION, Fourth-Party Plaintiff,**

v.

**MOTOR CLASSIC CORPORATION, Fourth-Party Defendant.**

No. 1192, Docket 86–7128.

United States Court of Appeals, Second Circuit.

Argued April 23, 1986.

Decided June 2, 1986.

Arlen S. Yalkut, New York City, for James V. Clemente.

Lance Roger Spodek, New York City (Anthony Santoni, New York City, of counsel), for Sheffield Commercial Corp.

Before LUMBARD, MANSFIELD and MESKILL, Circuit Judges.

MANSFIELD, Circuit Judge:

In this diversity action James V. Clemente appeals from an order entered by Judge Robert W. Sweet of the Southern District of New York awarding judgment in the amount of $20,543.17 to Sheffield Commercial Corporation on its breach of contract claim based on Clemente's failure to make payments required by an automobile lease agreement. On appeal Clemente maintains that the lease agreement at issue was procured by fraud, and is therefore not enforceable. In the alternative, he claims that we should modify the damage award to reflect the terms of the agreement. Clemente further argues that the requirements of the Motor Vehicle Retail Installment Sales Act (M.V.R.I.S.A.), Pers. Prop.Law § 301, *et seq.* (McKinney's 1976 & 1986 Supp.), applied to the contract and

that Sheffield failed to comply with them. We conclude that the district court did not err in rejecting Clemente's defense of fraudulent inducement but that the damage award must be reduced. We remand the case to the district court to redetermine the amount of damages. The district court on remand will also determine whether the M.V.R.I.S.A. is applicable and, if so, whether statutory penalties for violation of the Act should be imposed.

In January 1984, Clemente, who was interested in buying a sports car, visited the showroom of Westchester Foreign Car Service, where a salesman showed him a red 1970 De Tomaso Mangusta, an Italian sports car priced at $27,000. Clemente decided to buy it and later arranged with the salesman to pay $10,000 in cash and to finance the remaining balance. On March 23, 1984, Clemente returned to the showroom to purchase the car and met with a representative of Sheffield Commercial Corporation, which Clemente understood to be the finance company. Clemente executed an agreement with Sheffield that is the subject of this suit.

The agreement is titled "Motor Vehicle Lease" and provides that Clemente would gain possession of the car as a lessee, while title to the vehicle was to be retained by Sheffield. Clemente agreed to accept the car "as is" and signed a document acknowledging that Sheffield "DISCLAIMS ANY WARRANTY OR GUARANTY EXPRESSED OR IMPLIED". He also acknowledged that "SHEFFIELD COMMERCIAL CORPORATION DISCLAIMS ANY AND ALL RESPONSIBILITY FOR THE VEHICLES MECHANICAL AND PHYSICAL CONDITION WHICH YOU [Clemente] HAVE CHOSEN". In consideration for possession of the vehicle, Clemente obligated himself to make 48 monthly payments of $444, plus tax, and to pay $10,000 plus two monthly payments prior to delivery. Lastly, an "Open-End Purchase Option Rider" gave Clemente the option of purchasing the vehicle at the close of the lease period for an additional $3,000. If Clemente exercised this option he would have paid a total of $36,885.40 (including tax) for the car.

Clemente picked up the car on April 9, 1984. It overheated on his way home. The car proved to be a "lemon" and a succession of automotive disasters ensued. The series of breakdowns culminated in an encounter with a pothole on May 2, 1984 which seriously damaged the vehicle. The car was given over to mechanics and never driven by Clemente again. Clemente made several more monthly payments to Sheffield, and then, after paying a total of $13,136.56, discontinued compliance with the lease. Sheffield ultimately repossessed the vehicle, and repaired it. The district court found that Sheffield had resold it for $11,500, although Sheffield's bill of sale listed the resale price as $15,000. Sheffield instituted this diversity action to recover the remainder of the payments due on the lease.

The action was bench-tried before Judge Sweet. Clemente testified that he was induced to purchase the car by fraudulent representations that the transaction was a purchase (as distinguished from a lease) and by the seller's concealment of the car's defects. Judge Sweet rejected these claims, holding that the transaction was governed by the express terms of the documents signed by the parties, which cast the transaction in terms of a lease agreement containing explicit terms, including a disclaimer of all warranties and an express statement that Clemente accepted the vehicle "as is". Accordingly Judge Sweet enforced the lease agreement, awarding Sheffield $19,543.17 damages. The figure, based solely on Sheffield's calculations, was arrived at by subtracting from $36,885.40 (the total amount which Clemente would be required to pay under the lease in order to purchase the car) the payments made under the lease by Clemente, which amounted to $13,136.56, and the additional sum of $4,205.67, which was one-half of the salvage value realized by Sheffield upon resale of the car after certain expenses for repairs. Pursuant to the contract, the district court awarded Sheffield $1,000 compensation for attorney's fees.

## DISCUSSION

■ Clemente's claim of fraudulent inducement requires little discussion. Even if Sheffield's agent described the transaction as a sale, and it is far from clear that he did, no fraud is claimed with respect to the contract payment provisions, or disclaimers of warranties. Whether characterized as a "sale" or a "lease", no misrepresentations are alleged regarding the obligations imposed or rights created by the contract.

■ It is well settled that a party seeking recision of a contract on the ground that it was fraudulently induced must demonstrate that the alleged misrepresentation was "material" in that it influenced the party's decision to enter into the contract. *United States ex rel. Roman v. Schlesinger*, 404 F.Supp. 77, 85–86 (E.D.N.Y.1975); *Restatement of Torts (Second)*, § 537 (1977); 24 *New York Jurisprudence*, § 157 at 224–26 (1962). Here the alleged misrepresentation did not affect the essential obligations of the parties but related only to the characterization of the agreement.

■ Clemente's claim that Sheffield fraudulently misrepresented the condition of the vehicle is not supported by any evidence in the record. We cannot say that the district court clearly erred in finding that Clemente had not met his burden of proving that the contract was fraudulently induced.

■ Of more substance is Clemente's assertion that the district court's calculation of damages is erroneous. The "Purchase Option Rider" provides that if the lessor regains possession of the car during the term of the lease due to default by the lessee, the lessee is still obligated to make the payments due under the agreement. However, in such a situation, the rider requires that "the Vehicle Lessor will make reasonable efforts to sell [the vehicle] at

such price and on such terms as Lessor may deem advisable, as professionals". It further mandates that

"from the proceeds of such sale, Lessor shall deduct its expenses including, without limitation, storage, repossession, repair ... and a disposition charge of $100.00 and, if Lessor institutes legal proceedings, Lessor's reasonable counsel fees and other expenses as provided in the lease, the balance remaining being the 'net proceeds' of such sale, Lessor shall apply the net proceeds of such sale to lessee's obligation, calculated as above; Lessee shall pay any resulting deficiency to Lessor and, if a surplus results, Lessor shall pay one-half (½) of such surplus to Lessee...."

Even though the "net proceeds" did not come close to meeting Clemente's obligation under the contract, let alone provide a "surplus" over and above the amount owed, the district court only credited Clemente with one-half the "net proceeds" from the resale.[1] Under this view of the contract, any amount of "net proceeds", no matter how small, apparently constitutes a "surplus" to be shared by the two parties. Aside from clashing with the clear meaning of the contractual language, this interpretation transforms what would otherwise be a simple requirement that Sheffield mitigate its damages into a clause which penalizes Clemente by requiring him to make full payment on a car that has been resold by Sheffield to another customer, without reducing his obligation by the amount which Sheffield received. In effect, it permits Sheffield, at least in part, to sell the same product twice and credit itself with the proceeds from both sales.

■ The district court adopted damage calculations prepared by Sheffield and not contested by Clemente, who was not represented below by his appellate counsel.[2] Or-

1. The district court found the "net proceeds" to be $8,411.34, but only credited Clemente with $4,205.67.

2. The district court provided Clemente's counsel with an opportunity to raise objections and ar-

guments. The court asked counsel "I don't want to stick [Clemente] for a lousy DiTomaso, but how, under these documents, can I not do it? ... I would love to figure a way to avoid this, but I can't do it." Nevertheless, Clemente's counsel simply failed to direct the court's atten-

dinarily, failure to present an argument to the district court precludes appellate consideration of that contention. *In re Bildisco,* 682 F.2d 72, 82 (3d Cir.1982), aff'd sub nom. *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). However, in the rare case where the record discloses an error that is "plain and may result in a miscarriage of justice", *McNamara v. Dionne,* 298 F.2d 352, 355 (2d Cir.1962), we will take cognizance of it though timely objection was not made. *Williams v. City of New York,* 508 F.2d 356, 362 (2d Cir.1974). We find this to be such a case because the error appears on the face of the documents and resulted in a clear windfall to Sheffield at Clemente's expense.[3] The judgment should therefore be modified by crediting Clemente with the full amount of the "net proceeds".

■ On appeal Clemente, now with new counsel, contends that the lease agreement was required to conform to the provisions of the Motor Vehicle Retail Instalment Sales Act (M.V.R.I.S.A.), N.Y.Pers.Property Law § 301, *et seq.* (McKinney's 1976 & 1986 Supp.), and that it failed to do so. Although this argument also was not presented to the district court, we will consider it because of the strong public interest in enforcement of the Act. Traditional doctrines of waiver do not bar courts from considering whether a contract is illegal or violates statutory requirements designed to protect the general public. *California Pacific Bank v. Small Business Admin.,* 557 F.2d 218, 223 (9th Cir.1977) (court has duty to raise such issues sua sponte); *Nyhus v. Travel Management Corp.,* 466 F.2d 440,

446 (D.C.Cir.1972) (same); *McCall v. Frampton,* 99 Misc.2d 159, 167, 415 N.Y. S.2d 752, 758 (Sup.Ct.1979), *modified in part, aff'd in part,* 81 A.D.2d 607, 438 N.Y.S.2d 11 (1981) (considering whether contract violates public policy though issue was not pleaded properly).

The terms of the M.V.R.I.S.A. indicate that it was intended not only to create rights in favor of individual automobile purchasers but to protect the public generally. Toward this end, the Act subjects the errant seller to civil and criminal penalties. N.Y.Pers.Prop. § 307(1) & (2).[4] The availability of such penalties indicates that the Legislature has determined that the public, as well as aggrieved buyers, has an interest in enforcement of the Act. Therefore, it is appropriate for this court to consider Sheffield's lack of compliance with the Act.

The M.V.R.I.S.A. is applicable to "retail instalment contract[s]" for the sale of motor vehicles. Such contracts include

"a contract for the bailment or leasing of a motor vehicle by which the bailee or lessee contracts to pay as compensation for its use a sum substantially equivalent to or in excess of its value and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of the motor vehicle upon full compliance with the terms of the contract." *Id.* at § 301(5).

The contract in this case required payment in excess of the state price of the vehicle and provided Clemente with an option to purchase the vehicle. Accordingly, it plainly meets the statutory definition of a "retail instalment contract".

---

tion to evidence indicating that Sheffield's damage calculations were excessive.

**3.** Clemente's counsel also failed to bring to the district court's attention several doubtful factual findings incorporated in the calculation of damages. For example, the calculation stated the amount received from resale of the automobile at $11,500, while Sheffield's own bill of sale listed the price at $15,000 (A–49). Similarly, the calculation credited Clemente with only $3,911.34 in insurance payments to offset the amount Sheffield spent on repairs, while the repair company placed the amount allowed it by the insurance policy at $6,751.35 (A–44, 46).

**4.** New York Personal Property Law § 307(1) and (2) provides:

"**§ 307. Penalties**
"1. Any person who shall wilfully violate any provision of this article shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not exceeding five hundred dollars.
"2. A wilful violation of sections three hundred two or three hundred three by any person shall bar his recovery of any credit service charge, delinquency or collection charge or refinancing charge on the retail instalment contract involved."

The Act exempts sales "for a commercial or business use". *Id.* at § 301(4). Clemente signed a document acknowledging that "Sheffield Commercial Corp. is relying upon your representation that the vehicle you are leasing from us ... is primarily for business or commercial use as opposed to personal, household, or family purposes." The record contains no evidence suggesting that this statement is true. On the contrary, in view of the circumstances—the private purchase of a sports car—it appears likely that Sheffield presented Clemente with this document for the purpose of evading application of the Act. By specifying that the protection of the Act cannot be waived, *id.* at § 308, the Legislature intended that a seller should not escape the duties imposed by the M.V.R.I.S.A. merely by procuring a consumer's signature on a document. Whether phrased as a "waiver", or a false statement that the car is intended for commercial use, such a document has no legal effect. Instead, the issue presents a question of fact to be determined by the district court—whether Sheffield reasonably perceived the intended use of the sports car to be commercial.

■ Assuming that Sheffield had no basis for concluding that the car would be used commercially, the provisions of the Act were applicable. Section 302 requires that all motor vehicle retail instalment contracts bear certain notices, and contain specified information. It also incorporates the requirements of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* Even a glance at the terms of the contract indicate that these requirements were not met in this case.

■ Failure to comply with M.V.R.I.S.A. does not, however, render a contract completely unenforceable, rather it triggers the imposition of specified statutory penalties. Section 307(1) bars the seller from recovery of "any credit service charge, delinquency or collection charge" if the violation of § 302 was willful. Since the district court was not asked to consider whether Sheffield violated the Act, or whether any such violation was "willful", and as an appellate court we are precluded from making factual findings, we remand the case to the district court to determine the effect of M.V.R.I.S.A. on the parties' rights in this action.

The district court's decision on the issue of liability is affirmed and the case is remanded for further proceedings on the issue of damages in the light of this opinion.