RODNEY LEE, Plaintiff-Appellant, v. NATIONWIDE CASSEL, L.P., *et al.*, Defendants-Appellees (Nationwide Cassel, L.P., formerly d/b/a Nationwide Acceptance Corporation, Plaintiff; Rommel Gonzalez *et al.*, Defendants; Edelmira Rivera, Counterclaimant-Appellant; Nationwide Cassel, L.P., *et al.*, Counterdefendants-Appellees).

First District (6th Division)   No. 1—93—4203

Opinion filed December 22, 1995.

512

EGAN, J., dissenting.

Edelman & Combs (Daniel A. Edelman, Cathleen M. Combs, Tara G. Redmond, Eric Vander Arend, and Michelle A. Weinberg, of counsel), and Lawrence Walner & Associates, both of Chicago, for appellants.

Katten, Muchin & Zavis, of Chicago (Bonita L. Stone and Glenn Collins, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

Appellants Rodney Lee and Edelmira Rivera sought compensatory and statutory damages pursuant to the terms of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2, 2E, 2F (West 1992)) and the Illinois Sales Finance Agency Act (205 ILCS 660/16 (West 1992)). Appellants based their claims principally upon alleged violations by appellees Nationwide Cassel, L.P. (Cassel), Nationwide Acceptance Corp. and N.A.C. Management Corp. of section 18 of the Illinois Motor Vehicle Retail Installment Sales Act (the Act) (815 ILCS 375/18 (West 1992)). Appellants claimed that appellees participated in a scheme designed to misrepresent the extent of liability of certain consumers who sign motor vehicle retail installment sales contracts. The trial court dismissed appellants' claims on the pleadings. We now reverse.

The issue presented is whether the trial court properly dismissed appellants' pleadings under the terms of section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). In dismissing appellants' claims, the trial court made three findings: (1) dismissal was the only course of action consistent with *Magna Bank v. Comer* (1992), 274 Ill. App. 3d 788, 600 N.E.2d 855; (2) appellants' signatures on loan documents indicating that they had taken delivery of the vehicles at issue were conclusive as to the question of whether the appellants had "actually received" the vehicles; and (3) appellants' complaints failed to allege fraud with sufficient particularity to state a claim under the Consumer Fraud and Deceptive Business Practices Act. We review each of these findings.

Because their claims were dismissed on the pleadings, we accept as true all well-pleaded facts and all inferences that can reasonably be drawn from those facts. (*Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 473, 564 N.E.2d 1222.) A complaint should not be dismissed for failure to state a claim unless it clearly appears that no set of facts could be proved under the allegations that would entitle

the party to relief. (*Meerbrey*, 139 Ill. 2d at 474.) The standard of review on appeal from a motion to dismiss is whether the complaint sufficiently states a cause of action; we do not consider the merits of the claim. *Commerce Bank, N.A. v. Plotkin* (1994), 255 Ill. App. 3d 870, 627 N.E.2d 746.

In August 1991, Denis Davis sought to purchase a vehicle from Tower Oldsmobile, Inc. (Tower). Tower obtained a credit application from Davis, which revealed Davis' age, his mother's name and address, and the fact that Davis lived with a roommate. Tower forwarded the application to Cassel, a finance company. Cassel ordered a credit report regarding Davis. Cassel examined Davis' credit and rejected his application. As a result, Davis was asked by Tower to furnish a "co-signer" as a condition of the sale.

Davis secured Lee, his roommate, to act as co-signer to the loan contract. Davis took Lee to Tower where Tower took credit information from Lee. At the top of the application filled out by Davis and Lee are handwritten notes that the credit application concerns a "co-signer for Davis." Tower informed Davis and Lee that they would have to return in order to complete the loan documents after Lee's job and credit were verified. This application was then forwarded to Cassel.

Cassel ordered a credit report on Lee. As a result of reviewing the credit reports for both Lee and Davis, Cassel learned that Davis and Lee were not related to one another. Cassel's records refer to Lee as a "cosigner" or "co-maker." Cassel's records also indicate that Lee was Davis' roommate. Cassel's policy was to review the credit of parties to a retail installment contract and then direct dealers as to how the documents involved in the transaction were to be completed.

The retail installment contract signed by Davis and Lee is a printed form with the name "Nationwide Cassel L.P." inserted in advance. Cassel approved the form prior to its use by Tower. Davis and Lee each signed the contract and Cassel subsequently approved the transaction with Lee listed as a "buyer." Davis thereafter drove the vehicle from Tower's lot. Lee has never driven the vehicle and has only been in the vehicle twice, both times as a passenger.

Immediately after the contract was executed by Davis and Lee, it was assigned to Cassel. Subsequently, Cassel claimed that Davis had defaulted on the contract. Without instituting legal proceedings against Davis, Cassel attempted to enforce a wage assignment against Lee and threatened to file suit against him.

The pleadings in Rivera's case present similar facts. In June 1991, Rommel Gonzalez sought to purchase a vehicle from Olympic Hyundai. Olympic asked Gonzalez to furnish a co-signer because of

Gonzalez' insufficient credit rating. Gonzalez convinced Rivera to act as co-signer.

Cassel conducted a credit investigation of Gonzalez and Rivera, as a result of which it acquired actual knowledge that Gonzalez and Rivera were not married to one another and that Rivera is not the parent of Gonzalez. Cassel was also aware that Rivera was going to act as co-signer or co-maker of the loan to Gonzalez. Nationwide's "Statement of Financial Responsibility" lists Rivera as a "co-maker" in two separate places, and its form letter requesting employment information for the applicant has an authorization section in which Rivera signed on the line for "Joint Applicant or Other Party." On the "Agreement to Provide Accidental Physical Damage Insurance," both Gonzalez and Rivera are listed as a "Named purchaser[s]," but only Gonzalez was required to sign the document as the "Named Insured." Finally, on a form titled "Contract Supplement," which is to "be completed and submitted with the retail installment contract before purchase can be effected," Gonzalez is singly listed as the "customer."

Both appellants claimed that the automobile dealerships, in conjunction with the finance companies to which they assigned their rights, requested they sign installment contracts as "buyers" when, in fact, they knew that section 18 of the Act precluded the appellants from having primary liability because neither would take actual receipt of the vehicles. Appellants claim that, because appellees knew they would not make actual use of the vehicles, the request that appellants sign the contracts as a "buyer" amounts to an "unfair and deceptive" practice actionable under the Consumer Fraud and Deceptive Business Practices Act.

We begin by noting that the issues raised by the appellants in this case are not new. This is one of four cases decided by the appellate court in the past few years involving the construction of section 18 of the Act. (See *Magna Bank v. Comer* (1992), 274 Ill. App. 3d 788, 600 N.E.2d 855; *Arca v. Colonial Bank & Trust Co.* (1994), 265 Ill. App. 3d 498, 637 N.E.2d 687; *Taylor v. Trans Acceptance Corp.* (1994), 267 Ill. App. 3d 562, 641 N.E.2d 907.) In each case, including this one, consumers made claims that section 18 of the Act prevented them from being held primarily liable as "buyers" or "co-buyers" under a motor vehicle retail installment sales contract because they did not "actually receive" the vehicle. In *Arca*, *Taylor*, and here, appellants claimed that the use of the terms "buyer" or "co-buyer" in multiple-consumer transactions amounted to a violation of the Consumer Fraud and Deceptive Business Practices Act.

■ Section 18 of the Motor Vehicle Retail Installment Sales Act is captioned "Co-signers" and states in pertinent part:

"Each person, other than a seller or holder, who signs a retail installment contract may be held liable *only to the extent that he actually receives the motor vehicle described or identified in the contract*, except that a parent or spouse who co-signs such retail installment contract may be held liable to the full extent of the deferred payment price notwithstanding such parent or spouse has not actually received the motor vehicle described or identified in the contract and except to the extent such person other than a seller or holder, signs in the capacity of a guarantor of collection.

The obligation of such guarantor is secondary, and not primary. The obligation arises only after the seller or holder has diligently taken all ordinary legal means to collect the debt from the primary obligor, but has not received full payment from such primary obligor or obligors." (Emphasis added.) (815 ILCS 375/18 (West 1994).)

We briefly review each of the relevant cases.

In *Magna Bank v. Comer* (1992), 274 Ill. App. 3d 788, 600 N.E.2d 855, the plaintiff assignee of a motor vehicle retail installment contract sued the consumer defendant who had signed the contract as a "co-buyer," but who was not the spouse or parent of the person who had actual possession of the vehicle. (*Comer*, 274 Ill. App. 3d at 789.) The defendant sought to raise section 18 as a defense to the plaintiff's claim, asserting that he could not be primarily liable if he did not possess the car. The court determined, however, that in the absence of fraud or misrepresentation on the part of the seller, the fact that the defendant was designated as the owner of the automobile in the sales agreement and on the title to the vehicle precluded him from raising the statute as a defense. *Comer*, 274 Ill. App. 3d at 792.

Subsequently, the first district, fourth division, decided the case of *Arca v. Colonial Bank & Trust Co.* (1994), 265 Ill. App. 3d 498, 437 N.E.2d 687. The procedural posture of the *Arca* case was identical to the case currently before us. Appellant Lourdes Arca had signed a motor vehicle retail installment sales contract with a car dealership that subsequently assigned the agreement to a third party. Arca claimed that the car dealership and the third-party assignee violated the Consumer Fraud and Deceptive Business Practices Act by requiring Arca to sign a contract each defendant knew to be unenforceable under the Motor Vehicle Retail Installment Sales Act. The court concluded that, because private citizens do not have a private right of action under the Motor Vehicle Retail Installment Sales Act (see 815 ILCS 375/23 (West 1994)), Arca could not bring a cause of action under the terms of the Consumer Fraud and Deceptive Business Practices Act. (*Arca*, 265 Ill. App. 3d at 502.) However, the court concluded that the allegations of Arca's complaint were sufficient to

allege a cause of action based upon common law fraud, even though appellants had not formally pled such a cause of action. (*Arca*, 265 Ill. App. 3d at 503.) The appellate court concluded that the trial court had improperly dismissed the case on the pleadings and remanded the matter for further consideration.

Subsequently, in *Taylor v. Trans Acceptance Corp.* (1994), 267 Ill. App. 3d 562, 641 N.E.2d 907, the first district, fifth division, under identical facts, analyzed the statutory language and history of section 18 and concluded that *Comer* was wrongly decided. As in *Arca* and the case *sub judice*, the procedural posture of the case involved a consumer who had signed a motor vehicle retail installment contract as a "buyer," along with a friend who also signed as a "buyer" but who was not the consumer's spouse or child. Although the plaintiff did not take physical receipt of the vehicle, the finance company that had been assigned the contract sought payment from the plaintiff without first suing the party who had possession of the vehicle. Plaintiff claimed that the actions of the assignee and the dealership violated the Consumer Fraud and Deceptive Business Practices Act in that attempts to hold a person who did not actually receive the vehicle primarily liable were unlawful and violated section 18 of the Act. The trial court dismissed the complaint, but the appellate court reversed, finding that the plaintiff had stated a cause of action under the Consumer Fraud and Deceptive Business Practices Act. The court remanded the case for further proceedings.

■ Thus, of the three previous cases involving section 18 that have reached the appellate level, two from our own district, *Arca* and *Taylor*, have concluded that section 18 limits primary liability under a motor vehicle retail installment contract to those consumers who take physical possession of a motor vehicle, regardless of how the parties are designated in the contract. These decisions are inconsistent with the earlier holding in *Comer*. The opinion in *Arca* indicates that consumers such as Lee and Rivera have a claim for common law fraud but not a claim under the Consumer Fraud and Deceptive Business Practices Act. The opinion in *Taylor* does not consider whether consumers such as Lee and Rivera have a claim for common law fraud, but does indicate that such consumers have a cause of action under the Consumer Fraud and Deceptive Business Practices Act.

We reject the court's analysis in *Comer*, as the fourth division implicitly did in *Arca* and as the fifth division expressly did in *Taylor*. Section 18 of the Act was specifically amended by the General Assembly so that the term "retail buyer" was removed from the statute and replaced with the term "person *** who signs a retail install-

ment contract." This amendment makes it clear that the designations chosen by the parties to the agreement, even designations such as "buyer" or "co-buyer," do not control the question of which of the consumers signing the agreement are "primarily liable." The legislature, by amending the Act, made primary liability possible only for those consumers who take "actual receipt" of the vehicle or for those who sign the contract who are the spouse or parent of the person who takes "actual receipt." All other signatories to the agreement can be liable only as guarantors of collectability, as a matter of statutory law.

Moreover, we agree with the conclusion reached by the court in *Taylor*, which limited primary liability to those consumers who take *actual* receipt of the vehicle as evidenced through use of the vehicle, not to those consumers who are designated formally as the vehicle's owner in the certificate of title or some other document. Whether a consumer has "actually received" the vehicle in a contested case is a question of fact. Although *Comer* and *dicta* in *Taylor* indicate that an automobile sales company can assure primary liability against a co-signing consumer by transferring title or by obtaining a written representation that the consumer will "actually utilize" the vehicle (see *Comer*, 274 Ill. App. 3d at 792; *Taylor*, 267 Ill. App. 3d at 570), these alone must not be allowed to circumvent either the statutory terms or the intent of the Act. (See, *e.g., Heastie v. Community Bank* (N.D. Ill. 1989), 727 F. Supp. 1133; *Barco Auto Leasing Corp. v. House* (1987), 202 Conn. 106, 520 A.2d 162; *Sheffield Commercial Corp. v. Clemente* (2d Cir. 1986), 792 F.2d 282.) The purpose of the amendments made to section 18 by the General Assembly in 1975 was to prevent consumers who do not receive the automobile in a co-signing transaction from making themselves primarily obligated with the stroke of a pen. (See *Taylor*, 267 Ill. App. 3d at 567-68.) While we agree that this section is unusual, paternalistic and may, in fact, limit the ability of some consumers to obtain needed credit, the statute's meaning is plain. The test for primary liability under the Act is "actual receipt" of the vehicle, not, as the appellees would have us find, "legal receipt."

Appellees claim that it is unfair to interpret section 18 in this way when it may be unclear at the time of the transaction who is going to take "actual receipt" of the vehicle. It is possible, for example, that even the consumers who sign the agreement may not yet have decided who will take "actual receipt." The complaints in this case, however, unequivocally allege that appellees had knowledge as to who would make use of the vehicles. In the vast majority of transactions, this will be the case. (See *Taylor*, 267 Ill. App. 3d at 571.) Even

so, section 18 does not preclude automobile dealerships from structuring their sales transactions in such a way as to comply with section 18, even when it is unknown at the time of the purchase which of the signatories will take actual receipt of the vehicle. Appellants have included in the record a form agreement used by one credit corporation that demonstrates this. The agreement provides, just below the "Co-Buyers" signature line:

> "I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein. The previous sentence does not apply if the Co-Buyer is a parent or spouse of the Buyer or actually receives the motor vehicle purchased hereunder. Such Co-Buyer acknowledges and agrees to be primarily obligated under this contract."

This language is consistent with the proper construction of section 18.

■ Finally, we find error in the trial court's ruling that the appellants' complaint fails to set out facts with sufficient particularity to state a claim under the Consumer Fraud and Deceptive Business Practices Act. In their complaints, Lee and Rivera allege that appellees, in conjunction with the automobile dealerships through which they generate their retail installment business, have a policy and practice of having persons sign as "buyers" whom they know not to be subject to liability except as guarantors of collection under the Act. Appellants alleged that appellees were aware that Lee and Rivera were within the class of persons protected by section 18, but that, despite this knowledge, appellees directed the dealerships to present Lee and Rivera with unenforceable agreements designed to circumvent the Act. Finally, Lee and Rivera claim that appellees completed their scheme by attempting to collect from them even though appellees knew no money was yet due.

The appellants' complaints are sufficiently specific to withstand appellees' section 2—615 challenge, at least with regard to the Consumer Fraud and Deceptive Business Practices Act. It is generally recognized that the Consumer Fraud and Deceptive Business Practices Act should be liberally construed to effect its remedial purposes. (*Eshaghi v. Hanley Dawson Cadillac Co.* (1991), 214 Ill. App. 3d 995, 1001-02, 574 N.E.2d 760.) This purpose is to eradicate " 'all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers.' " (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 563, 491 N.E.2d 464, quoting *American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 257, 361 N.E.2d 1370.) The statute prohibits "unfair or deceptive acts or practices,"

not just acts or practices which might rise to the level of being fraudulent under the common law. (*Zinser v. Rose* (1993), 245 Ill. App. 3d 881, 888, 614 N.E.2d 1259; *Rubin v. Marshall Field & Co.* (1992), 232 Ill. App. 3d 522, 533, 597 N.E.2d 688.) The term "unfair practice" is inherently insusceptible to precise definition, and effective regulation of the Consumer Fraud and Deceptive Business Practices Act requires that it remain flexible. *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 290, 430 N.E.2d 1012. See also *People ex rel. Hartigan v. All American Aluminum & Construction Co.* (1988), 171 Ill. App. 3d 27, 524 N.E.2d 1067 (upholding similar complaint against motion to dismiss).

In remanding the case, our disposition does not address any of the grounds asserted by appellees in their motion to dismiss that were not relied upon by the trial court in dismissing appellants' claims. These issues include whether section 18 of the Act can be the basis of a private right of action under the Consumer Fraud and Deceptive Business Practices Act or the Sales Finance Agency Act, whether appellants' pleadings set out facts sufficient to support a claim under the Sales Finance Agency Act, whether there are sufficient facts to make out a class action, whether plaintiffs have adequately alleged three violations of the Consumer Fraud and Deceptive Business Practices Act as required by section 2E, or whether the alleged violations of the Consumer Fraud and Deceptive Business Practices Act are willful and material as required by section 2E of that statute. These grounds have not been urged by appellees as a basis for affirming the trial court and have not been briefed.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

RAKOWSKI, J., concurs.

JUSTICE EGAN, dissenting:

Let me begin this dissent with identification of the issues as drawn by the plaintiffs. An examination of the plaintiffs' complaints and briefs makes it unmistakably clear that they are alleging *fraud* on the part of the defendants. To illustrate, the complaints allege that the defendants "deceptively and fraudulently misrepresented the status of [the plaintiffs] and class members by having them sign as 'co-buyers' rather than 'guarantors of collectability.' " I make this observation to dispel any notion that we are concerned with

something other than fraud that might arise from the majority's statement that the "statute prohibits 'unfair or deceptive acts or practices,' not just acts or practices which might rise to the level of being fraudulent under the common law." (277 Ill. App. 3d at 518-19.) The majority also points out that the "term 'unfair practice' is inherently insusceptible to precise definition and effective regulation of the Consumer Fraud and Deceptive Business Practices Act requires that it remain flexible" (277 Ill. App. 3d at 519, citing *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 290, 430 N.E.2d 1012, and *People ex rel. Hartigan v. All American Aluminum & Construction Co.* (1988), 171 Ill. App. 3d 27, 524 N.E.2d 1067). Neither case is factually applicable here.

In *Scott*, the Attorney General filed suit to enforce a subpoena on the defendant association which conducted childbirth classes. The defendant alleged that the Consumer Fraud Act did not apply to it; that the Act was void for vagueness and that the Act violated other constitutional provisions. There was no complaint under the Act involved, let alone insufficiency. Contrary to the majority's conclusion that *Hartigan* upheld a "similar complaint," I find that the complaint in *Hartigan* has no resemblance to the complaint before us. In *Hartigan*, the complaint alleged that the defendants negligently performed home remodelings in violation of their contracts with the homeowners. Let there be no mistake, therefore: the issue here is whether the complaints allege *facts* that establish fraud on the part of the defendants; and I maintain that they do not.

In *Arca*, discussed by the majority, the court held that the complaint alleged a cause of action based upon common law fraud, and the majority notes the court did so even though the appellants "had not formally pled such a cause of action." (277 Ill. App. 3d at 516.) The appellants not only did not plead such a cause of action, they did not even raise the question in their briefs in the trial court or in the appellate court. In any event, for reasons to be explained later, I disagree that the complaint in *Arca* established common law fraud. In *Taylor v. Trans Acceptance Corp.* (1994), 267 Ill. App. 3d 562, 641 N.E.2d 907, relied on by the majority, the court held, without any analysis other than a passing reference to *Arca*, that the complaint alleged a cause of action under the Consumer Fraud Act.

The majority also cites *Barco Auto Leasing Corp. v. House* (1987), 202 Conn. 106, 520 A.2d 162, and *Sheffield Commercial Corp. v. Clemente* (2d Cir. 1986), 792 F.2d 282. In *Barco*, the lender filed an action against the borrowers to recover a deficiency under a leasing agreement for the rental of an automobile. The defendants counterclaimed and sought a rescission of the agreement. The issue in the case was

whether the trial court "properly calculated the amount of damages to which the defendants were entitled upon rescission" of the contract. (*Barco*, 202 Conn. at 107, 520 A.2d at 163.) The court held that the failure of the seller to comply with the requirements of the statute barred the seller from claiming an offset against the buyer's rescissory damages. The court did not hold that the buyers had an independent cause of action for damages *and* attorney fees for the seller's violation of the statute.

In *Sheffield*, a lessor of an automobile sued the lessee, who alleged in defense that the lease agreement violated the New York motor vehicle retail installment sales statute. The Second Circuit Court of Appeals stretched mightily even to reach the issue of whether the lease agreement conformed to the provisions of the statute because the question was raised for the first time on appeal. The court held that the seller might be subject to civil and criminal liabilities under the statute. I find it very significant that the court also held that "[f]ailure to comply with M.V.R.I.S.A. does not, however, render a contract completely unenforceable, rather it triggers the imposition of specified statutory penalties." *Sheffield*, 792 F.2d at 287.

What is the fraud alleged here? It is the allegation that when the defendants told the plaintiffs they were buyers and should sign as buyers the defendants made a misrepresentation. The fact that the defendants may have misconstrued the statute, of course, is irrelevant, according to the plaintiffs. And if the defendants misconstrued the statute, they were in impressive company: the three appellate judges who decided *Comer*.

In *Randels v. Best Real Estate, Inc.* (1993), 243 Ill. App. 3d 801, 612 N.E.2d 984, the plaintiff alleged that the defendants had violated the Consumer Fraud Act by failing to disclose the restrictions in an ordinance on the property purchased by the plaintiff. The appellate court affirmed the judgment for the defendants, saying this:

> "However, a plaintiff must show that the deceptive act related to a material fact. [Citations.] A deceptive representation or omission of law generally does not constitute a violation of the Consumer Fraud Act because both parties are presumed to be equally capable of knowing and interpreting the law. [Citation.]" (243 Ill. App. 3d at 805.)

(See also *City of Aurora v. Green* (1984), 126 Ill. App. 3d 684, 467 N.E.2d 610 (false allegations by defendant that property was properly zoned was insufficient to maintain action under the Consumer Fraud Act).) In this case, the plaintiffs are presumed to be just as capable of knowing and interpreting the statute as the defendants are.

The plaintiffs have also cited *Heastie v. Community Bank* (N.D.

Ill. 1989), 727 F. Supp. 1133. Apart from the fact that we are not bound by the holding of the district court and that some factual distinctions exist between that case and the one before us, we note that the defendants in *Heastie* did not raise the argument that the complaint alleged misrepresentations of law rather than fact. The defendant simply maintained that it did not intend to mislead.

Consider the facts of the cases before us: the plaintiffs went to the sellers with their friends, who wanted to buy cars. The sellers would not sell the cars to the plaintiffs' friends because the sellers felt the plaintiffs' friends were poor security risks. The plaintiffs helped their friends get the cars by signing agreements which the plaintiffs are presumed to have read. The agreements said that the plaintiffs were the buyers of the car. The plaintiffs' friends failed to pay. The plaintiffs do not have to pay. The plaintiffs are not content with the defense to the defendants' claims; they insist that they are entitled to "appropriate compensatory and punitive damages"; an injunction; *and attorney fees.*

I strongly disagree that the plaintiffs should be entitled to any cause of action. It has been held that the defense of estoppel is a shield, but may not be used as a sword. (*Malloy v. City of Chicago* (1938), 369 Ill. 97, 15 N.E.2d 86.) I see no reason why the same holding should not apply to the plaintiffs' claims. I recognize that the Consumer Fraud Act is to be construed liberally to protect consumers, but I refuse to believe that the legislature intended that it be a cash cow for persons like the plaintiffs who sign contracts with eyes wide open.

For these reasons, I dissent. I would affirm the judgment of the circuit court.