NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

              Docket No. 80465--Agenda 27--September 1996.

    RODNEY LEE et al., Appellees, v. NATIONWIDE CASSEL, L.P., et al.,

                               Appellants.

                    Opinion filed November 21, 1996.

                                    

     JUSTICE HEIPLE delivered the opinion of the court:

     Plaintiff Rodney Lee and counterclaimant Edelmira Rivera

(hereinafter plaintiffs) sought to enjoin the enforcement of

certain motor vehicle installment sales contracts by

defendant/counterdefendant Nationwide Cassel, L.P., d/b/a

Nationwide Acceptance Corp. and N.A.C. Management Corp.

(hereinafter defendant). Plaintiffs also sought compensatory and

punitive damages under the Illinois Consumer Fraud and Deceptive

Business Practices Act (815 ILCS 505/2 (West 1992)) and the

Illinois Sales Finance Agency Act (205 ILCS 660/16 (West 1992)).

The circuit court of Cook County consolidated the two cases and

dismissed plaintiffs' claims on the pleadings. 735 ILCS 5/2--615

(West 1992). The appellate court reversed and remanded. 277 Ill.

App. 3d 511. We allowed defendant's petition for leave to appeal.

155 Ill. 2d R. 315. For the reasons that follow, we affirm in part

and reverse in part.

                      FACTUAL AND PROCEDURAL HISTORY

     In August 1991, Lee's roommate, Dennis L. Davis, attempted to

purchase a car from Tower Oldsmobile, Inc. Davis completed a credit

application at the dealership in order to obtain financing for the

vehicle. Defendant, a sales finance agency which purchases

installment contracts from dealerships, was notified of Davis'

application and ordered a credit report. Based on the credit

information, the dealership refused to approve Davis' application

unless he provided a co-signer for the purchase of the vehicle.

     At Davis' request, Lee agreed to act as co-signer. Lee

completed a credit application at the dealership which identified

him as a "co-signer for Davis." Defendant obtained a credit report

on Lee, after which the dealership approved financing of the

vehicle. Both Davis and Lee signed the sales contract on lines

marked "buyer," even though the contract contained a separate line

marked "guarantor."

     The facts of Rivera's claim are similar. Her friend, Rommel

Gonzalez, attempted to purchase a vehicle at Olympic Hyundai. When

Gonzalez applied for financing at the dealership, defendant

requested credit information on him. The dealership refused to

approve the loan unless Gonzalez provided a co-signer. Rivera

agreed to act as co-signer, and furnished credit information to

defendant. The financing was then approved. Gonzalez and Rivera

signed the contract on lines marked "buyer," leaving blank the line

entitled "guarantor."

     Sometime after Davis and Gonzalez took delivery of the

vehicles, each of them failed to make scheduled loan payments to

defendant. Without instituting legal proceedings against Davis,

defendant demanded that Lee pay the debt, and attempted to enforce

a wage assignment against him. Defendant also demanded payment from

Rivera and instituted a collection action against her and Gonzalez.

     Lee then filed a complaint seeking to enjoin defendant's

enforcement of the contract against him. Lee alleged that section

18 of the Motor Vehicle Retail Installment Sales Act (815 ILCS

375/18 (West 1992)) prevents defendant from holding him liable

under the contract because he did not actually receive the vehicle

and he was not the parent or spouse of a person who actually

received the vehicle. Lee also sought compensatory and punitive

damages under the Consumer Fraud and Deceptive Business Practices

Act (815 ILCS 505/1 et seq. (West 1992)) and the Sales Finance

Agency Act (205 ILCS 660/1 et seq. (West 1992)) for defendant's

alleged attempts to create and enforce liability on his part for

the debt when section 18 of the Motor Vehicle Retail Installment

Sales Act precludes such liability. In the collection suit brought

against her, Rivera filed a counterclaim containing substantially

the same allegations as those in Lee's complaint.

     After consolidating the two actions, the circuit court granted

defendant's motion to dismiss based on section 2--615 of the Code

of Civil Procedure (735 ILCS 5/2--615 (West 1992)). The court found

that under Magna Bank v. Comer, 274 Ill. App. 3d 788 (1992), the

plaintiffs' signatures on the contracts as buyers made them jointly

liable with their friends who also signed as buyers,

notwithstanding the allegations that plaintiffs, unlike their

friends, never actually received the vehicles. The court stated in

its memorandum of opinion that it was obligated to "follow the

decision of the Fourth District [of the] Appellate Court [in Comer]

if it applies since there is no First District decision on this

issue." The circuit court also dismissed the counts based on the

Consumer Fraud and Deceptive Business Practices Act and the Sales

Finance Agency Act because plaintiffs failed to allege any fraud or

misrepresentation by defendant.

     The appellate court reversed and remanded. 277 Ill. App. 3d

511. It noted that since the time of the trial court's dismissal of

plaintiffs' claims, two appellate court opinions from the First

District had departed from Comer by holding that section 18 of the

Motor Vehicle Retail Installment Sales Act limits primary liability

under an automobile installment contract to those consumers who

take physical possession of the vehicle. See Arca v. Colonial Bank

& Trust Co., 265 Ill. App. 3d 498 (1994); Taylor v. Trans

Acceptance Corp., 267 Ill. App. 3d 562 (1994). The instant

appellate court panel likewise rejected Comer and followed Arca and

Taylor by holding that plaintiffs were not liable under the

contracts because they did not actually receive the vehicles. In

addition, the court held that plaintiffs had set out facts with

sufficient particularity to state a claim under the Consumer Fraud

and Deceptive Business Practices Act by alleging that defendant

attempted to create and enforce liability against them when it knew

they could not legally be held liable under the contracts.

                                 ANALYSIS

                          I. Co-Signer Liability

     In considering a motion to dismiss, we accept as true all

well-pleaded facts and draw all inferences from those facts in

favor of the nonmovant. Meerbrey v. Marshall Field & Co., 139 Ill.

2d 455, 473 (1990). We will sustain a dismissal for failure to

state a claim only if it clearly appears that no set of facts could

be proved under the allegations which would entitle the party to

relief. Meerbrey, 139 Ill. 2d at 473.

     Section 18 of the Motor Vehicle Retail Installment Sales Act

is entitled "Co-signers" and provides as follows:

               "§18. Each person, other than a seller or holder,

          who signs a retail installment contract may be held

          liable only to the extent that he actually receives the

          motor vehicle described or identified in the contract,

          except that a parent or spouse who co-signs such retail

          installment contract may be held liable to the full

          extent of the deferred payment price notwithstanding such

          parent or spouse has not actually received the motor

          vehicle described or identified in the contract and

          except to the extent such person other than a seller or

          holder, signs in the capacity of a guarantor of

          collection.

               The obligation of such guarantor is secondary, and

          not primary. The obligation arises only after the seller

          or holder has diligently taken all ordinary legal means

          to collect the debt from the primary obligor, but has not

          received full payment from such primary obligor or

          obligors.

               No provisions in a retail installment contract

          obligating such guarantor is valid unless:

               (1) there appears below the signature space provided

          for such guarantor the following:

               `I hereby guarantee the collection of the above

          described amount upon failure of the seller named herein

          to collect said amount from the buyer named herein.'; and

               (2) unless the guarantor, in addition to signing the

          retail installment contract, signs a separate instrument

          in the following form:

          `EXPLANATION OF GUARANTOR'S OBLIGATION

               You ... (name of guarantor) by signing the retail

          installment contract and this document are agreeing that

          you will pay $ ... (total deferred payment price) for the

          purchase of ... (description of goods or services)

          purchased by ... (name of buyer) from ... (name of

          seller).

               Your obligation arises only after the seller or

          holder has attempted through the use of the court system

          to collect this amount from the buyer.

               If the seller cannot collect this amount from the

          buyer, you will be obligated to pay even though you are

          not entitled to any of the goods or services furnished.

          The seller is entitled to sue you in court for the

          payment of the amount due.'

               The instrument must be printed, typed, or otherwise

          reproduced in a size and style equal to at least 8 point

          bold type, may contain no other matter (except a union

          printing label) than above set forth and must bear the

          signature of the co-signer and no other person. The

          seller must give the co-signer a copy of the retail

          installment contract and a copy of the co-signer

          statement." 815 ILCS 375/18 (West 1992).

     Plaintiffs contend that they are exempt from liability under

this section because they did not actually receive the vehicles

that were the subject of the contracts, and because they are

neither parents nor spouses of their friends who did actually

receive the vehicles. Plaintiffs also allege that defendant

instructed the dealership to have them sign the contracts as

buyers, and that they were never shown or asked to sign an

instrument entitled "Explanation of Guarantor's Obligation" as

described in the statute.

     Defendant contends that plaintiffs are primarily obligated for

the debts because they signed the contracts as buyers rather than

guarantors. Defendant also argues that under section 18, plaintiffs

"actually received" the motor vehicles because plaintiffs were

listed as owners on the certificates of title issued for the

vehicles.

     As originally enacted in 1967, section 18 simply provided that

a person "other than the retail buyer or spouse of the buyer" could

not be held liable under a motor vehicle installment contract

unless that person received and signed a form entitled "Explanation

of Co-Signer Obligation." This form explained that the co-signer

could be sued and held liable for the full amount of the debt even

though the buyer might have funds to pay the amount due. Ill. Rev.

Stat. 1969, ch. 121½, par. 578.

     Section 18 was substantially amended in 1975, resulting in the

version at issue, quoted above in its entirety. This 1975 amendment

changed the statute by providing that no person who signs a motor

vehicle installment contract may be held liable for the debt unless

he actually receives the vehicle, is the parent or spouse of

someone who actually receives the vehicle, or signs in the capacity

of a guarantor of collection. The amended statute further provides

that the obligation of a guarantor of collection is secondary, and

not primary. The statute explains that this secondary liability

arises only after attempts to collect the full amount of the debt

from the primary obligor through the legal process have failed.

     A comparison of the 1975 amended statute with its predecessor

conclusively demonstrates that plaintiffs may not be held liable

under the instant installment sales contracts. Defendant contends

that plaintiffs are primarily liable because they signed the

contracts as buyers and not as guarantors. Under the amended

statute, however, primary liability depends not on the capacity in

which a person purportedly signs the contract, but rather on the

person's actual receipt of the vehicle. The 1975 amendment

specifically deleted the term "retail buyer" from the statute and

substituted the word "person" in its place. The effect of this

change is to prohibit a person from being held primarily liable

under a motor vehicle installment contract if that person does not

actually receive the vehicle and is not the spouse or parent of a

person who actually receives the vehicle.

     Defendant argues that plaintiffs did "actually receive" the

vehicles as required by the amended statute because their names

were placed on the vehicles' titles. This argument erroneously

equates "actual receipt" with "legal receipt" and thereby

completely ignores the effect of the 1975 amendment. Prior to the

amendment, any "retail buyer" of a vehicle under an installment

contract could be held liable for the debt regardless of whether he

"actually received" the vehicle. The name of any such "retail

buyer" would, of course, be placed on the vehicle's title. By

omitting any reference to the "retail buyer," the amended statute

renders irrelevant for purposes of installment sales liability the

vehicle's legal ownership status. [fn 1]  Among those persons who

sign the sales contract, only those who actually receive physical

possession of the vehicle may be held primarily liable.

     Plaintiffs allege that they did not actually receive the

vehicles described in the contracts, but were instead included in

the sales transactions solely as co-signers for their friends.

Plaintiffs also allege that they have not had the vehicles in their

physical possession at any time. Under these alleged facts,

plaintiffs may not be held primarily liable under the contracts. In

addition, we note that plaintiffs allege that they did not sign the

statutorily mandated form explaining the obligation of a guarantor.

Given this alleged fact, plaintiffs also may not be held

secondarily liable. 815 ILCS 375/18 (West 1992).

     Defendant contends in the alternative that if primary

liability under section 18 is predicated solely on actual receipt

of the vehicle as evidenced by physical possession rather than by

legal ownership, then the statute is unconstitutionally vague under

the due process clause of the United States Constitution (U.S.

Const., amend. XIV). We find this contention to be without merit.

It is our duty to construe acts of the legislature so as to affirm

their constitutionality and validity if it can reasonably be done.

People v. Bales, 108 Ill. 2d 182, 188 (1985). The determination of

whether a statute is void for vagueness must be made in the factual

context of each case. Bales, 108 Ill. 2d at 189. Under the alleged

facts, defendant was clearly on notice that plaintiffs would not

actually receive the vehicles by taking physical possession of

them. The statute is therefore not unconstitutionally vague.

     We hold that the circuit court erred in finding plaintiffs

liable under the contracts.

                     II. Fraud and Deceptive Practices

     Plaintiffs allege that defendant violated the Consumer Fraud

and Deceptive Business Practices Act (815 ILCS 505/2 (West 1992))

and the Sales Finance Agency Act (205 ILCS 660/16 (West 1992)) by

attempting to create and enforce liability against them under the

contracts when such liability was precluded by section 18 of the

Motor Vehicle Retail Installment Sales Act (815 ILCS 375/18 (West

1992)). Defendant responds that its actions were based on its

belief that plaintiffs could be held liable under section 18 if

they signed as buyers and placed their names on the vehicles'

titles.

     The Consumer Fraud and Deceptive Business Practices Act

prohibits "the use or employment of any deception, fraud, false

pretense, false promise, misrepresentation or the concealment,

suppression or omission of any material fact, with intent that

others rely upon the concealment, suppression or omission of such

material fact." 815 ILCS 505/2 (West 1992). The Sales Finance

Agency Act (205 ILCS 660/1 et seq. (West 1992)) prohibits, inter

alia, conduct by a sales finance agency that is deceptive,

fraudulent, or committed in willful violation of the Motor Vehicle

Retail Installment Sales Act or with actual knowledge that the

Motor Vehicle Retail Installment Sales Act is being violated. 205

ILCS 660/8.7, 8.9, 8.3, 8.5 (West 1992).

     An examination of the pleadings filed in this action reveals

that plaintiffs have failed to allege facts sufficient to state a

claim against defendant under either the Consumer Fraud and

Deceptive Business Practices Act or the Sales Finance Agency Act.

Plaintiffs allege that defendant directed the auto dealerships to

have plaintiffs sign the contracts as buyers and place plaintiffs'

names on the vehicles' titles. As discussed above, this alleged

conduct by defendant was entirely ineffective to obligate

plaintiffs under the contracts. The futility of defendant's conduct

does not, however, render that conduct fraudulent.

     A fraudulent statement is one that is made with knowledge that

it is false or with reckless disregard of its truth or falsity.

McMeen v. Whipple, 23 Ill. 2d 352, 355 (1961). Defendant's alleged

misrepresentation that plaintiffs were primarily liable under the

contracts was based upon an erroneous interpretation of section 18

of the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/18

(West 1992)). The appellate court in Magna Bank v. Comer, 274 Ill.

App. 3d 788 (1992), arrived at this same erroneous interpretation

when called upon to construe the statute. Given this uncertainty

about the applicable law, the pleadings here fail to adequately

allege that defendant knew that plaintiffs could not be held liable

under the contracts, or that defendant acted with reckless

disregard of whether plaintiffs could be held liable. Similarly,

plaintiffs have not alleged that defendant engaged in the

concealment, suppression, or omission of a material fact, since

plaintiffs' immunity from liability was not a fact known to

defendant, but rather was a disputed question of law.

     Finally, plaintiffs have likewise failed to state a claim

under the Sales Finance Agency Act by alleging that defendant

willfully or with actual knowledge violated section 18 of the Motor

Vehicle Retail Installment Sales Act because, under the state of

the law at the time, it was impossible for defendant to have had

actual knowledge that plaintiffs could not be held liable under the

contracts. The trial court thus did not err in dismissing

plaintiffs' claims for failing to allege fraud with specificity.

                                CONCLUSION

     For the foregoing reasons, we reverse in part and affirm in

part the judgments of the appellate and circuit courts, and remand

this cause to the circuit court for further proceedings consistent

with this opinion.

Appellate court judgment affirmed in part

                                                    and reversed in part;

                                  circuit court judgment affirmed in part

                                                    and reversed in part;

                                                          cause remanded.

                                                                         

                                                                         

[fn 1] We note that section 18 has recently been amended once

again.  Pub. Act 89--650, eff. January 1, 1997 (amending 815 ILCS

375/18). Under the new version of the statute, any person who signs

a motor vehicle retail installment contract and is listed on the

certificate of title issued for the vehicle is primarily liable for

the debt.  Defendant contends that this amendment demonstrates that

all persons listed on the vehicle's title are primarily liable

under the version of the statute at issue as well.  We believe the

amendment compels precisely the opposite conclusion.  If

defendant's contention were correct, there would have been no need

to amend the statute.